IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

JULIE A. BUSSING,

                Plaintiff,

    v.

LEGENT CLEARING, LLC,
COR SECURITIES HOLDINGS, INC.,
CARLOS P. SALAS, in his Official
Capacities, and CHRISTOPHER L.
FRANKEL, in his Official Capacities,

                Defendants.

Case No. 8:12-CV-238-WKU-PRSE

**DEFENDANTS' BRIEF IN SUPPORT OF
MOTION TO DISMISS**

Defendants Legent Clearing, LLC ("Legent"), COR Securities Holdings, Inc. ("COR"),

Carlos P. Salas and Christopher L. Frankel (collectively referred to herein as "Defendants"), by

and through their undersigned counsel, pursuant to Fed. R. Civ. P. 12(b)(6) and NECivR

7.0.1(a)(1), respectfully submit the following Brief in Support of their Motion to Dismiss

Plaintiff Julie A. Bussing's ("Plaintiff") Amended Complaint.[1]

## I.  INTRODUCTION

Each of the claims Plaintiff attempts to assert in her Amended Complaint arises out of

Defendants' employment at Legent, and specifically the termination of Plaintiff's employment

on or about May 20, 2012.[2]  Plaintiff asserts six causes of action, none of which are meritorious,

---

[1] Plaintiff filed a Complaint on July 9, 2012 (Doc. 1) and an Amended Complaint on August 14, 2012 (Doc. 19) following the Court's granting of Plaintiff's Motion for Extension of Time to File Amended Complaint (Doc. 17). Plaintiff voluntarily dismissed, by virtue of not reasserting, causes of action for "Constructive Discharge" and "Violation of the Nebraska Wage Payment & Collection Act."  *Langford v. Alegent Health*, Nos. 8:09CV446, 8:09CV169, 2010 WL 519809, at *1 (D. Neb. Feb. 8, 2010) ("Any claims not contained in the amended complaint will be deemed abandoned.")

[2] Plaintiff's Amended Complaint states the following six causes of action: (1) "Retaliation in Violation of 15 U.S.C. § 78u-6," which is apparently meant to assert a claim of whistleblower retaliation under the Dodd-Frank Act, 15 U.S.C. §§ 78a to 78pp; (2) Violation of Neb. Rev. Stat. §§ 20-148; (3) "Wrongful Termination in Violation of

and several of which are not even remotely plausible on their face as pled by the Plaintiff. Specifically, in Plaintiff's only federal claim, which is pled with the heading "Count One – Retaliation In Violation of 15 U.S.C. § 78u-6," Plaintiff did not plead any facts or allege any manner in which she engaged in the kind of protected activity contemplated under 15 U.S.C. § 78u-6 and, thus, she cannot make a claim under Count One.

Likewise, Plaintiff fails to assert the facts necessary to sufficiently state claims for the remaining Counts Two, Three, Five, and Six. Yet, even if Counts Two, Three, Five, and Six plausibly stated causes of action, which they do not, they arise out of state law, not federal law.[3] Accordingly, absent Count One or diversity of citizenship, which also does not exist as plainly set forth in Plaintiff's Amended Complaint, federal jurisdiction does not exist.

Because the only federal claim Plaintiff asserts should be dismissed for failure to state a claim, and because diversity jurisdiction does not exist, the Court should decline to exercise supplemental jurisdiction over any remaining state law claims. Thus, Defendants respectfully request the Court dismiss Plaintiff's Amended Complaint for failure to state a claim and decline jurisdiction of any remaining state law causes of action, thereby dismissing the Amended Complaint in its entirety.

## II.  SUMMARY OF PLAINTIFF'S ALLEGATIONS IN THE COMPLAINT

Defendants set forth below the following factual allegations pled in Plaintiff's Complaint, as they are relevant to the Court's review of Defendants' Motion to Dismiss. Defendants, however, do not admit these allegations are true.

---

Public Policy"; (4) "Breach of Contract"; (5) "Defamation"; and (6) "Detrimental Reliance," which appears to allege a claim for promissory estoppel.
[3] To the extent Plaintiff may have sufficiently pled the bare elements necessary to state her fourth cause of action for breach of contract, this state claim must be dismissed upon the Court's decline of supplemental jurisdiction.

## A.    Parties

1.    Plaintiff Julie A. Bussing is a resident of Douglas County, Nebraska.  (Doc. 19, ¶ 1).  She "relocated from Washington to Nebraska" to work at Legent's main office located in Omaha, Nebraska.  (*Id.*, ¶¶ 2, 88).

2.    Legent is a provider of clearing services to brokerage clients, headquartered in Omaha, Nebraska.  (*Id.*, ¶ 2).  Legent is a wholly owned subsidiary of COR.  (*Id.*, ¶ 4).

3.    COR is a private investment management firm specializing in the energy, real estate and financial sectors.  COR is headquartered in Santa Monica, California.  (*Id.*, ¶ 3).

4.    Carlos P. Salas became an Executive Vice President of Legent on or around May 4, 2012.  (*Id.*, ¶ 5).  He previously served on the Board of Directors of COR and as an Officer on the Board of Managers of Legent.  (*Id.*).

5.    Christopher L. Frankel is the Chief Executive Officer ("CEO") of Legent and an Officer on the Board of Managers for COR.  (*Id.*, ¶ 6).

## B.    Plaintiff's Employment

6.    After acting as a consultant to COR for several months in late 2011 during the acquisition of Legent, Plaintiff became employed by Legent as an Executive Vice President on January 1, 2012.  (*Id.*, ¶¶ 17, 19).

7.    Plaintiff was employed pursuant to an employment agreement (the "Agreement") between herself and Legent.  (*Id.*, ¶ 31; Exhibit A to Complaint[4] (hereinafter, "Complaint Ex. A")).

---

[4] As discussed below in Section III, materials which are attached to the Complaint as Exhibits and are accepted by the parties as authentic may be considered in construing the sufficiency of the Complaint.  *Meehan v. United Consumers Club Franchising Corp.*, 312 F.3d 909, 913 (8th Cir. 2002); *see also Pacific Life Ins. Co. v. Qwest Corp.*, No. 8:09CV168, 2009 WL 2259739, at *3 (D. Neb. July 29, 2009).

8.      The Agreement provided Plaintiff was responsible for Legent's daily management and business operations.  (Complaint Ex. A ¶ 3; *Id.*, ¶ 53).

9.      The Agreement set forth Plaintiff's compensation and potential bonus structure and also included provisions allowing Plaintiff's employment to be terminated for cause. (Complaint Ex. A ¶¶ 6, 9.4).

10.     The Agreement also provided:

> **If [Plaintiff's] employment with the Company is terminated for any reason other than <u>without Cause</u>** pursuant to Section 9.5, **[Plaintiff] shall not be entitled to receive any payments or benefits**, other than the [Plaintiff's] accrued but unpaid Base Salary or vacation time owed to [Plaintiff] pursuant to the Company policy or practice or applicable law and any reimbursable expenses properly incurred and submitted by [Plaintiff].

(Complaint Ex. A ¶ 9.9) (emphasis added).

11.     The Agreement also contained an integration clause, entitled "Entire Understanding," which provided:

> This Agreement represents the entire Agreement and understanding between the parties as to the subject matter herein and supersedes all prior or contemporaneous agreements whether written or oral.  The Company and the Executive each acknowledge and agree that this Agreement replaces in its entirety any written or oral agreement, offer letter or other arrangement prepared by or on behalf of the Company.

(Complaint Ex. A ¶ 17).

12.     Finally, the Agreement contained a "Modification" clause, which provided that "[n]o modification of the terms and conditions of this Agreement shall be valid unless in writing and signed by all parties to this Agreement."  (Complaint Ex. A ¶ 18).

## C.      FINRA Request for Information and Examination

13.     In January through March 2012, the Financial Industry Regulatory Authority ("FINRA") requested information and documents from Legent.  (Doc. 19, ¶¶ 22-23).  FINRA made a second similar request on April 4, 2012.  (*Id.*, ¶ 24).

14.     On April 25, 2012, FINRA notified Legent that it would conduct a review of Legent's information and documents under the authority granted by FINRA Rule 8210.  (*Id.*, ¶ 36).  Plaintiff, along with Legent staff, prepared the documents and information requested by FINRA.  (*Id.*, ¶ 38).

15.     Plaintiff also decided to halt Legent's penny stock processing while preparing for the FINRA examination.  (*Id.*, ¶ 39).

16.     On April 27, 2012, Mr. Salas informed Plaintiff that COR was dissatisfied with her work on the FINRA examination preparations and her decision to stop processing penny stocks.  (*Id.*, ¶ 40).

17.     From April 30 to May 3, 2012, FINRA conducted an onsite examination at Legent's headquarters in Omaha, Nebraska.  (*Id.*, ¶ 50).

**D.     Leave of Absence and Termination**

18.     On May 4, 2012, Mr. Salas informed Plaintiff that COR believed she was not suited to her current position as Executive Vice President of Legent.  (Complaint ¶ 51).  Plaintiff was asked to take a previously delayed vacation, after which her role would be changed.  (*Id.*, ¶¶ 51, 53).

19.     On May 6, 2012, after Plaintiff departed Legent on leave, she contends she heard rumors that she had been terminated and that Mr. Frankel was "dancing on [her] grave."  (*Id.*, ¶ 52).  According to Plaintiff, "COR and Legent were aware of these rumors but failed to address them."  (*Id.*).

20.     On May 20, 2012, Plaintiff attended a meeting with the CEO of COR, Steven Sugarman, and Mr. Salas.  (*Id.*, ¶ 55).

21.     On the same day, May 20, 2012, Plaintiff received an e-mail from Mr. Sugarman informing her that she was terminated for cause.  (*Id.*, ¶ 55).

22.     On May 21, 2012, Plaintiff received a letter confirming her employment at Legent had been terminated for cause.  (*Id*., ¶ 56).

23.     On June 19, 2012, Plaintiff received a copy of the Form U5 – Uniform Termination Notice for Securities Industry Registration, stating Plaintiff was discharged from Legent because she "DID NOT PERFORM POSITION CONSISTENT WITH COMPANY EXPECTATIONS."  (*Id*., ¶ 57).

24.     On July 9, 2012, Plaintiff filed a Complaint and Demand for Jury Trial.  (Doc. 1).

25.     On August 14, 2012, Plaintiff filed an Amended Complaint and Demand for Jury Trial.  (Doc. 19).

### III.  MOTION TO DISMISS STANDARD

In deciding a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), courts assume as true all well-pleaded factual allegations and then determine whether such allegations plausibly give rise to an entitlement of relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Hamm v. Groose*, 15 F.3d 110, 112 (8th Cir. 1994).  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To survive a motion to dismiss, the factual allegations in a complaint "must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint must be dismissed if it does not plead "enough facts to state a claim for relief that is plausible on its face."  *Id*. at 570.  If the plaintiff "ha[s] not nudged [her] claims across the line from conceivable to plausible, [her] complaint must be dismissed."  *Id*. at 547.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice." *Id*. While a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citation and punctuation omitted).

When ruling on a motion to dismiss, courts must take a complaint's allegations as true and liberally construe the complaint in a light most favorable to the plaintiff. *Kottschade v. City of Rochester*, 319 F.3d 1038, 1040 (8th Cir. 2003). Courts are "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002).

When considering a motion to dismiss under Rule 12(b)(6), courts may not consider matters outside of the pleadings. *Campbell v. Qwest Comm.*, No. 8:07CV69, 2007 WL 1362448, at *2 (D. Neb. Apr. 25, 2007). A document, however, is not considered "outside the pleading" for purposes of Rule 12(b) if the complaint specifically refers to the document and if its authenticity is not questioned. *Id.* (citing to *Molina v. Los Angeles County, Dept. of Mental Health*, 58 F. App'x 311, 313-14 (9th Cir. 2003)). "[M]aterials attached to the complaint as exhibits may be considered in construing the sufficiency of the complaint." *Meehan v. United Consumers Club Franchising Corp.*, 312 F.3d 909, 913 (8th Cir. 2002); *see also Pacific Life Ins. Co. v. Qwest Corp.*, No. 8:09CV168, 2009 WL 2259739, at *3 (D. Neb. July 29, 2009) (documents referenced in complaint are "embraced by the pleadings and will be considered in construing the sufficiency of [plaintiff's] [c]omplaint").

## IV.  ARGUMENT

**A.     Plaintiff Has Not Engaged in Protected Activity With the SEC as Required by 15 U.S.C. § 78u-6(a)(5); Therefore, She Cannot State a Claim for Whistleblower Retaliation in Her First Cause of Action.**

Plaintiff's first cause of action alleges retaliation for what she apparently asserts was whistleblowing under the Dodd-Frank Act's recently enacted whistleblower protection provision, 15 U.S.C. § 78u-6.  (Doc. 19, ¶¶ 58-62).  Plaintiff contends she was retaliated against for "compliance with the Rule 8210 Document Request, cooperation during the FINRA Proceedings, and preparation of the Report."  (*Id.*, ¶ 59)  However, based on Plaintiff's own allegations, this conduct is not protected activity under the Dodd-Frank Act.

Under the Dodd-Frank Act, a whistleblower is defined as an individual "who provides . . . information relating to a violation of the securities laws to the [Securities and Exchange] Commission, in a manner established, by rule or regulation, by the Commission." 15 U.S.C. § 78u-6(a)(6); *see also* 15 U.S.C. § 78c(a)(15) (defining the term "Commission" to mean the "Securities and Exchange Commission.")  The whistleblower protection provision provides, in relevant part:

> No employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower—(i) in providing information to the Commission in accordance with this section; (ii) in initiating, testifying in, or assisting in any investigation or judicial or administrative action of the Commission based upon or related to such information; or (iii) in making disclosures that are required or protected under the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201 et seq.), the Securities Exchange Act of 1934 (15 U.S.C. 78a et seq.), including section 10A(m) of such Act (15 U.S.C. 78f(m)), section 1513(e) of Title 18, and any other law, rule, or regulation subject to the jurisdiction of the Commission.

15 U.S.C. § 78u-6(h)(1)(A).

Plaintiff alleges she is protected under 15 U.S.C. § 78u-6(h)(1)(A) based on her "compliance with" FINRA and "cooperation during" its Rule 8210 investigation.  (Doc. 19,

¶ 59).  These assertions indicate Plaintiff is attempting to assert a claim pursuant to 15 U.S.C. § 78u-6(h)(1)(A)(ii), which prohibits retaliation against an individual who "testif[ied] in[] or assist[ed] in any investigation or judicial or administrative action . . . ."  *Id.*  (*see also* Doc. 1, ¶ 145 (specifically alleging her cause of action is brought under 15 U.S.C. § 78u-6(h)(1)(A)(ii))).

However, this statute has been interpreted as an attempt by Congress to "encourage whistleblowers reporting [] violations to report to the SEC," rather than separate, independant agencies such as FINRA.  *Egan v. TradingScreen, Inc.*, No. 10 Civ. 8202 (LBS), 2011 WL 1672066, at *4 (S.D.N.Y. May 4, 2011) (holding a report to FINRA did not entitle the plaintiff to whistleblower protection, because FINRA "do[es] not impose a duty to disclose").  Thus, courts have interpreted "the first two anti-retaliation categories [to] **protect whistleblowers . . . who work with the SEC directly**, in some manner, concerning potential security violations." *Nollner v. Southern Baptist Convention, Inc.*, Nos. 3:12-cv-00040, 3:12-cv-00043, 2012 WL 1108923, at *6 (M.D. Tenn. Apr. 3, 2012) (emphasis added) (granting motion to dismiss whistleblower claim arising from internal report); *see also Egan*, 2011 WL 1672066, at *4 ("the anti-retaliation provisions of the Dodd-Frank Act explicitly prohibit retaliation against whistleblowers who provide information and testimony *to the SEC*") (emphasis in original).

In this case, as noted above, Plaintiff's factual allegations purportedly supporting this claim revolve around her alleged participation in FINRA's examination on April 30 to May 3, 2012.  (Doc. 19, ¶¶ 36-50).  Although Plaintiff contends she provided information to FINRA regarding alleged securities violations by Legent, she does not allege she provided information directly (or indirectly, for that matter) to the SEC.  (Doc. 19, ¶¶ 36-50).  For the same reasons, Plaintiff has also failed to plead any facts in support of a claim that she initiated, testified in, or assisted in any investigation or judicial or administrative action of the SEC.  At most, Plaintiff

has asserted she was involved with a FINRA investigation, which does not satisfy the requirements of the Dodd-Frank whistleblower statute.[5]  *See* 15 U.S.C. § 78u-6(h)(1)(A).

Based on a plain reading of the statute, as well as cases interpreting it, Plaintiff's assertion that she provided information to FINRA is insufficient to bring her within the parameters of a federal whistleblower retaliation claim pursuant to the Dodd-Frank Act, as she did not provided information to, or participate in any investigation by, the SEC.  Accordingly, Plaintiff's first cause of action should be dismissed for failure to state a claim.

**B.      Neb. Rev. Stat. § 20-148 Is Limited to State Civil Rights Claims and Cannot Be Used To Assert a Whistleblower Claim Pursuant to Federal Law.**

Plaintiff's second cause of action asserts a claim under Neb. Rev. Stat. § 20-148 for alleged retaliation in violation of Neb. Rev. Stat. §§ 48-1114(3).  The claimed retaliation is based on Plaintiff's purported "compliance with the Rule 8210 Document Request, . . . [and] directives to cease processing penny stock certificates . . . ."  (Doc. 19, ¶ 65).  Plaintiff has not properly pled a Section 20-148 claim.

Neb. Rev. Stat. § 20-148 is a "procedural statute which does not create any new substantive rights."  *Goolsby v. Anderson*, 549 N.W.2d 153, 157 (Neb. 1996).  Rather, Section 20-148 was enacted to provide plaintiffs the opportunity to vindicate rights already existing under constitutional or Nebraska civil rights laws.  *See Goolsby*, 549 N.W.2d at 158.  The statute provides, in relevant part:

> Any person or company . . . who subjects or causes to be subjected any citizen of this state . . . to the deprivation of any rights, privileges, or immunities secured by the United States Constitution or the Constitution and laws of the State of Nebraska, shall be liable to such injure [sic] person in a civil action . . . .

---

[5] FINRA is separate and apart from the United States SEC, which is a government organization.  Rather, FINRA is an "independent regulator for all securities firms doing business in the United States."  *See* http://www.finra.org/AboutFINRA/; *see generally Wachovia Securities, LLC v. Brand*, 671 F.3d 472, 475 at fn. 2 (4th Cir. 2012) ("FINRA is a private corporation that succeeded the National Association of Securities Dealers [("NASD")] and the enforcement divisions of the New York Stock Exchange as the self-regulatory organization for the securities industry").

Neb. Rev. Stat. § 20-148(1).

The Eighth Circuit, relying upon the statute's legislative history, has found the specific and limited purpose of Section 20-148(1) was to "allow people who have **complaints of discrimination** to go into court rather than being compelled to go only through the Equal Opportunity Commission." *Karstens v. International Gamco, Inc.*, 939 F. Supp. 1430, 1439 (D. Neb. 1996) (emphasis added) (citing to *Ritchie v. Walker Mfg. Co.*, 963 F.2d 1119, 1122 (8th Cir. 1992) and Floor Debate, L.B. 66, Judicial Committee, 86th Leg., 1st Sess. 434-35 (Feb. 11, 1977)). In other words, Section 20-148, was "created [as] an alternative method **for pursuing civil rights claims** that are defined elsewhere in constitutional or statutory law." *Id*. (emphasis added). *See also Buzek v. Pawnee County, Nebraska*, 207 F. Supp. 2d 961, 965 (2002) (finding the complaint must be "construed to allege a deprivation of [plaintiff's] civil rights" in order to allow the plaintiff to bring suit pursuant to Neb. Rev. Stat. § 20-148).

Plainly, then, Neb. Rev. Stat. § 20-148 was enacted for and applies only to civil rights claims, which are most commonly claims asserted against employers for violations of an employee's civil rights, and to allow direct access to the courts without first requiring the filing of an administrative charge or complaint with the Nebraska Equal Opportunity Commission. *See, e.g.*, *Goolsby v. Anderson*, 549 N.W.2d 153 (claim for sexual harassment in workplace properly brought under Neb. Rev. Stat. § 20-148); *Karstens*, 939 F. Supp. at 1430 (same). If this were not the case, Section 20-148 would create a separate, private right of action for each section of every Nebraska state law, which is plainly not what the drafters intended.

In addition, by its plain language, Neb. Rev. Stat. § 20-148 provides a remedy only for civil rights violations arising out of the United States Constitution or Nebraska state law. It does not provide a remedy for any federal law, with the sole exception of the United States

Constitution.  The drafting thus intentionally limits the scope of Section 20-148 to violations of state civil rights laws and the U.S. Constitution, and does not contemplate the violation of any federal law.

Here, Plaintiff attempts to assert a claim through Neb. Rev. Stat. § 20-148 for an alleged violation of a federal securities law.  (Doc. 19, ¶¶ 59-60).  Plaintiff did not plead that she was subjected to a state civil rights violation or a violation of her constitutional rights.  Indeed, she does not allege a claim arising from violation of any Nebraska law – instead, her claim is based entirely on 15 U.S.C. § 78u-6, a federal statute with no state analogue.

Because Section 20-148 was intended to apply only to constitutional and state civil rights violations, and because Plaintiff also fails entirely to allege any state civil rights law under which her rights were violated, her second cause of action must be dismissed.

**C.    Plaintiff's Third Cause of Action, Wrongful Termination in Violation of Public Policy, Fails Because She Does Not Plead Any State Public Policy Violation and Because Violation of a Federal Statute Is Not Recognized State Public Policy.**

"The clear and oft-cited rule . . . is that unless constitutionally, statutorily, or contractually prohibited, an employer, without incurring liability, may terminate an at-will employee at any time with or without reason."  *Malone v. American Business Information*, 634 N.W.2d 788, 791 (Neb. 2001).  Nebraska courts, however, recognize a public policy exception to the at-will employment doctrine when the motivation for firing the employee contravenes the state's public policy.  *See Ambroz v. Cornhusker Square Ltd*., 416 N.W.2d 510 (Neb. 1987) (finding employee was terminated against public policy after he refused to submit to a polygraph examination; Neb. Rev. Stat. § 81-1932 (Reissue 1999), which provides in part that "[n]o employer or prospective employer may require as a condition of employment or as a condition for continued employment that a person submit to a truth and deception examination. . . ." created the public policy upon which the court's decisions were based).

Though Nebraska courts recognize a public policy exception to the employment-at-will doctrine, it is "a very narrow exception." *See Reed v. Great Western Bank*, No. 8:08CV245, 2008 WL 4224113, *2 (D. Neb. Sept. 9, 2008). In fact, the Nebraska Supreme Court cautioned that "it [is] important that abusive discharge claims of employees at will be limited to 'manageable and clear standards.'" *Wendeln v. The Beatrice Manor, Inc.*, 712 N.W.2d 226, 239 (Neb. 2006) (quoted case omitted). It is clear, however, that a plaintiff asserting a claim for wrongful discharge in violation of Nebraska public policy must **state with specificity the state public policy claimed to be at issue**. *Gomez v. Cargill, Inc.*, No. 4:06CV3181, 2006 WL 3257184, *1-2 (D. Neb. Nov. 9, 2006) (dismissing claim where Plaintiff failed to "articulate a statutory or criminal violation or a broad, comprehensive statutory scheme that would constitute a 'clear expression of public policy' for purposes of a wrongful discharge claim.")

Moreover, Nebraska courts have not found that a **federal law**, like 15 U.S.C. § 78u-6, can support a public policy exception to the at-will employment doctrine. Other courts, however, have found federal statutes do not establish a public policy for their respective states. *See McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283, 289 (Pa. 2000) (dismissing public policy claim, and stating that, "in order to set forth a claim for wrongful discharge a plaintiff must do more than show a possible violation of a federal statute that implicates only her own personal interest. The plaintiff in some way must allege that some *public policy* of *this Commonwealth* is implicated, undermined, or violated because of the employer's termination of the employee. Public policy of this Commonwealth must be just that, the policy of this Commonwealth.") (emphasis added). *See also Clinton v. State ex rel. Logan County Election Bd.*, 29 P.3d 543 (Okla. 2001) (finding a plaintiff must identify an Oklahoma public policy goal that is clear, compelling and is articulated in existing Oklahoma constitutional, statutory, or

jurisprudential law); *Szaller v. American Nat'l Red Cross*, 293 F.3d 148 (4th Cir. 2002) (federal FDA regulations did not represent clear mandate of Maryland public policy for purposes of claim by employee discharged for reporting deficiencies in employer's blood-handling procedures); *Torrez v. City of Scottsdale*, No. cv-96-07667, 1997 WL 580326 (Ariz. Ct. App. July 15, 1997) (neither federal statutes nor municipal ordinances are cognizable sources; courts look to "the pronouncements of our founders, our legislature, and our courts to discern the public policy of this state").

Here, Plaintiff's third cause of action is entitled "Wrongful Termination in Violation of Public Policy." (Doc. 19, ¶¶ 69-71).[6]  Plaintiff has failed to identify any state statute or law which is a clear expression of public policy sufficient to support such a claim, and how Defendants have violated this policy.[7]  However, to the extent the claim is based on an alleged federal violation, no such public policy claim has been recognized in Nebraska, and 15 U.S.C. § 78u-6 does not establish any clear, mandated public policy for the state of Nebraska. Accordingly, Plaintiff's public policy claim should be dismissed.

**D.    Plaintiff Has Not Alleged Any False Statement Was Made and the Form U5 Was Protected by Absolute Privilege; Therefore, She Cannot Proceed on Her Fifth Claim for Defamation.**

The fifth cause of action asserted in the Complaint entitled "Defamation" must be dismissed because Plaintiff fails to allege facts necessary to sufficiently state the claim. (Doc. 19, ¶¶ 80-84).  "[A] claim of defamation requires (1) a false and defamatory statement

---

[6] Plaintiff pleads, and Defendants do not dispute, that Plaintiff's at-will employment was governed by a contract. (Doc. 19, ¶¶ 29-32 and Complaint Ex. A).  Accordingly, although Defendants deny Plaintiff's termination was improper, to the extent Plaintiff could potentially state a claim for "wrongful termination," it must necessarily arise out of a claim for breach of contract.  (Doc. 19, ¶¶ 74-79).

[7] Similarly, to the extent Plaintiff asserts her termination was a violation of Nebraska public policy as expressed in the NFEPA's prohibition against retaliation, Nebraska courts have held the NFEPA cannot be the basis for a claim for wrongful termination.  *Riggs v. County of Banner*, 159 F. Supp. 2d 1158, 1171, n.16 (D. Neb. 2001) (citing to *Andersen v. American Red Cross-Midwest Region Blood Services*, No. A-96-588, 1997 WL 627610 (Neb. Ct. App. Oct. 10, 1997)).  Regardless, Plaintiff has already alleged a separate claim under the NFEPA, although, for the reasons described in Section IV.A., it is without merit.  (Complaint ¶¶ 138-142).

concerning the plaintiff, (2) an unprivileged publication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Moats v. Republican Party of Nebraska*, 796 N.W.2d 584, 593 (Neb. 2011). "As the falsity of the statement is an element of a claim of defamation, a finding of truth results in the failure of the plaintiff to prove his or her case." *Norris v. Hathaway*, No. A-97-916, 1999 WL 14488, at *3 (Neb. Ct. App. Jan. 5, 1999). *See also DeLay First Nat. Bank & Trust Co. v. Jacobson Appliance Co.*, 243 N.W.2d 745, 752 (Neb. 1976) ("As applied to libel of one in his business or occupation," "truth in everything stated" will defeat a claim of defamation). In addition, "rumors" do not support a claim of defamation where the plaintiff does not allege "defendant ever uttered the words, or that the rumor was attributable to him." *Davis v. Meyer*, 212 N.W. 435, 436 (Neb. 1927).

In this case, Plaintiff apparently contends Mr. Frankel was "dancing on [her] grave" while she was on leave and that "there were rumors" Plaintiff "had been fired." (*Id.*, ¶ 52). Plaintiff further alleges "COR and Legent were aware of these rumors but failed to address them." (*Id.*). None of these allegations indicate an affirmative communication of any false statement about Plaintiff was ever made by any representative of COR or Legent or that the rumors arose from anything other than her own absence. Plaintiff likewise fails to specifically plead or set forth individuals to whom any such statements were allegedly made. Without alleging a statement published to a specific individual or individuals, Plaintiff has not stated a claim for defamation. In addition, as noted above, truth is a defense to a claim of defamation. It is undisputed that Plaintiff was, in fact, terminated on May 20, 2012 (*Id.*, ¶ 55), which precludes

her from asserting defamation based on any alleged "rumor" that she had been fired, even if she could plead sufficient facts regarding the publication of such a statement (though she cannot).

Finally, Plaintiff asserts the statements made "on Plaintiff's Form U5 – Uniform Termination Notice for Securities Industry Registration" were false.  (*Id.*, ¶ 81).  Plaintiff alleges the Form U5 indicated her discharge was because she "DID NOT PERFORM POSITION CONSISTENT WITH COMPANY EXPECTATIONS."  (*Id.*, ¶ 57).  Plaintiff does not dispute that she was terminated; thus, she apparently takes issue with the stated reason for the discharge.

First, this statement cannot be construed as false given the allegations in Plaintiff's own Amended Complaint, wherein she alleges Mr. Salas "expressed COR's extreme dissatisfaction with the approach taken by Plaintiff in response to the Rule 8210 Document Request and the decision that Legent cease processing penny stock certificates."  (*Id.*, ¶ 40).  She further alleges Legent's Chief Financial Officer, Jeff Sime, was extremely displeased with the way Plaintiff was discharging her duties in relation to the FINRA examination.  (*Id.*, ¶ 43).  Moreover, before the separation of her employment, Plaintiff alleges she was told by the company that her position needed to be "significantly changed" and she would no longer "be managing any staff", which Plaintiff "contested" before her employment was ultimately terminated.   (*Id.*, ¶¶ 51, 53-55).  Plaintiff, therefore, has tacitly admitted through her allegations that Defendants had a legitimate belief that she was not meeting their expectations for the position she held.  Moreover, there are no facts alleged that indicate the stated reason on the Form U5 was false.  Thus, Plaintiff has not pled sufficient facts to state a claim to relief that is plausible on its face.

Second, Legent's Form U5 reporting obligations are protected by absolute privilege. Form U5 reporting is nondiscretionary.  *Rosenberg v. Metlife, Inc.*, 866 N.E.2d 439, 444 (N.Y. Ct. App. 2007) ("The Form U-5 plays a significant role in the NASD's self-regulatory process.

Filing is mandatory within 30 days of termination of the registered representative and firms are subject to penalties should they fail to comply.")  Because Legent is required to file the Form U5, some states have found that reporting contained in the Form U5 is absolutely privileged.  *See Rosenberg*, 866 N.E. at 444 ("The Form U-5's compulsory nature and its role in the NASD's[8] quasi-judicial process, together with the protection of public interests, lead us to conclude that statements made by an employer on the form should be subject to an absolute privilege"); *Culver v. Merrill Lynch & Co.*, Civ. No. 8124, 1995 WL 422203, at *5 (S.D.N.Y. July 14, 1995) (granting a motion to dismiss U5 defamation claim on the grounds that the termination notice was absolutely privileged because it was made in the course of a quasi-judicial proceeding, was material and pertinent to the reasons for the employee's termination, and there was no allegation of malice).

Accordingly, Plaintiff cannot state a claim for defamation, and her fifth cause of action must be dismissed.

**E.     Plaintiff's Sixth Cause of Action, "Detrimental Reliance," Must Be Dismissed Because She Has Pled Facts Precluding Recovery.**

Plaintiff's sixth cause of action purportedly asserts a claim for "Detrimental Reliance." (Doc. 19, ¶¶ 86-91).  Nebraska does not recognize this claim; however, based on the elements alleged, Plaintiff appears to assert a claim for promissory estoppel.  "[P]romissory estoppel is based upon a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee which does in fact induce such action or forbearance." *Burns v. Nielseen*, 732 N.W.2d 640, 649-50 (Neb. 2007).  "Recovery on a theory of promissory

---

[8] On or about July 30, 2007, the NASD changed its name to FINRA.  *See Cory v. Allstate Ins.*, ---F.3d---, 2009 WL 2871541, at *3, FN1 (10th Cir. 2009).  Courts continue to interpret and enforce NASD rules as applicable to FINRA and often use the FINRA acronym to include NASD.  *In re James E. Bashaw & Co.*, ---S.W.3d---, 2009 WL 2231710, *11, FN2 (Tex. App. -Hous. (1st Dist.) 2009); *see also Axa Distributors, LLC v. Bullard*, Not Reported in F. Supp. 2d, 2008 WL 5411940 (M.D. Ala. 2008) ("Authority arising under the NASD Code governs and guides interpretations of the FINRA Rules to the extent there is no meaningful change from the NASD Code.").  Accordingly, the use of the acronym FINRA includes NASD.

estoppel is based upon the principle that injustice can be avoided only by enforcement of a promise." *Folgers Architects Ltd. v. Kerns*, 262 Neb. 530, 538, 633 N.W.2d 114, 121 (Neb. 2001).

However, "[w]hen an unambiguous contract exists that covers the issue for which damages are sought promissory estoppel is not a viable theory of recovery." *Id.*; *see also Consolidated Nutrition, L.C. v. Mackeprang*, No. A-03-395, 2004 WL 1486075, at *4 (Neb. App. July 6, 2004) (same); *American Casual Dining, L.P. v. Moe's Southwest Grill, L.L.C.*, 426 F. Supp. 2d 1356, 1371 (N.D. Ga. 2006) (dismissing promissory estoppel claim on motion to dismiss because "[w]hen neither side disputes the existence of a valid contract, the doctrine of promissory estoppel does not apply, even when it is asserted in the alternative"); *Doyle v. Holy Cross Hosp.*, 708 N.E.2d 1140, 1148-49 (Ill. 1999) (affirming dismissal of plaintiff's promissory estoppel claim on motion to dismiss because "once it is established by an admission of a party or by a *judicial finding*, that there is in fact an enforceable contract between the parties . . . then a party may no longer recover under a theory of promissory estoppel"); *Lim v. N.Y. Life Ins. Co.*, No. C.A. 97-1972, 1998 WL 54331, at *1 (E.D. Pa. 1998) (dismissing promissory estoppel count for failure to state a claim and holding "[w]hile breach of contract and promissory estoppel can be plead in the alternative, if the court finds that a contract exists, the promissory estoppel claim must fail."). For instance, "alleged oral promises of a long-term relationship" between the parties to a contract are "barred by the parol evidence rule," where the parties subsequently entered into a written contract for a term of years. *Simmons Foods, Inc. v. Hill's Pet Nutrition, Inc.*, 270 F.3d 723, 727 (8th Cir. 2001) (internal citations omitted).

In addition, when "a contract is formed **subsequent** to the promise upon which estoppel is asserted, there is no injustice in requiring the parties to abide by their contract." *Folgers*

*Architects Ltd.*, 262 Neb. at 538, 633 N.W.2d at 121 (emphasis added); *see also Simmons Foods, Inc.*, 270 F.3d at 727 (holding the parol evidence rule bars a written agreement from contradiction "by evidence of any prior agreement").  This is particularly true where the contract at issue contains an integration clause stating the contract constitutes the sole and final agreement of the parties, because "any representations made . . . prior to the execution of the [contract] were not integrated into the [contract] and had no binding effect" on the parties.  *Clearly Canadian Beverage Corp. v. American Winery, Inc.*, 257 F.3d 880, 890 (8th Cir. 2001).

In this case, Plaintiff alleges Defendants promised "she would be granted discretion" to implement a "Plan" to restructure Legent's securities-lending division and, allegedly, "creat[e] a culture of 'Zero Tolerance for Compliance/Legal Issues.'"  (Doc. 19, ¶ 86; *see also* ¶¶ 18, 21).  She also asserts she was promised "long-term employment with Legent."  (*Id.*, ¶ 86).  Plaintiff alleges these promises were made prior to the date on which she began working as an employee of Legent, "on January 1, 2012."  (*Id.*, ¶ 18-21).  Notably, the Agreement governing the terms and conditions of Plaintiff's employment with Legent was finalized and entered into on March 27, 2012.  (*Id.*, ¶ 31).

The Agreement contains specific provisions relating to and superseding the subject matter of the alleged promises.  Specifically, paragraph 3 outlines Plaintiff's position and duties and states Plaintiff "shall report directly and concurrently to the Chief Executive Officer ("CEO") at [Legent], the CEO at [COR], and, as necessary or required, to [Legent's] Board of Directors . . . ."  (Complaint Ex. A. ¶ 3).  Nothing in this paragraph grants Plaintiff unfettered discretion with relation to any of her duties, particularly the alleged "Plan," Plaintiff describes, despite the fact that Plaintiff's authority in her position at Legent is specifically set forth therein.  Plaintiff does not allege any other paragraph supposedly granting her this authority, and a review

of the Agreement shows none.  Thus, any alleged reliance on a promise, supposedly made prior to the date of the Agreement, regarding Plaintiff's "discretion" to implement a "Plan," does not support a claim for promissory estoppel.

Likewise, Plaintiff's term of employment (or lack thereof) is explicitly set forth in paragraph 1 of the Agreement and cannot be the basis of a claim for promissory estoppel. Contrary to Plaintiff's assertions, the term is not for "long-term employment."  Instead, Legent agreed to employ Plaintiff "for a period of three years following the Effective Date . . . **or until terminated in accordance with the provisions of Section 9 below**."  (Complaint Ex. A. ¶ 1) (emphasis added).  Paragraph 9 provides Plaintiff's employment may be terminated "**at any time**" by (among other methods) "mutual consent" of the parties, unilaterally "by the [Plaintiff]", and unilaterally by Legent, either "for Cause," or "without 'Cause.'"  (Complaint Ex. A. ¶¶ 9.4-9.7).  In other words, Plaintiff was not guaranteed employment of any length.  Because the impermanency of her employment is explicitly set out in the Agreement, she cannot attempt to assert promissory estoppel based on her own self-serving allegations of promises regarding the very same subject.

In addition, the Agreement, entered nearly three months following the alleged promises made to Plaintiff, contains an integration clause which "supersedes all prior or contemporaneous agreements whether written or oral."  (Complaint Ex. A ¶ 17).  Through that clause, Plaintiff specifically "acknowledge[d] and agree[d] that this Agreement replaces in its entirety any written or oral agreement, offer letter or other arrangement prepared by or on behalf of [Legent]."  (*Id*.). Plaintiff was clearly on notice that the only terms pertaining to her employment were set out in the Agreement.[9]  Therefore, to the extent Plaintiff is now trying to assert she relied upon any

---

[9] Similarly, to the extent Plaintiff contends any such oral assurances were made subsequent to the parties' agreement, although she provides no facts to support such a contention, she cannot have reasonably relied on any

promises made prior to and outside of the Agreement, her contention strains credulity and cannot be the basis of a claim for promissory estoppel.

Because Plaintiff has stated facts demonstrating the promises allegedly made to her are covered in the Agreement, and because she had ample notice that the Agreement contained the entire contract relating to her employment, Plaintiff's claim for promissory estoppel fails and must be dismissed.

**F.**     **The Individual Defendants Cannot Be Liable and Should Be Dismissed From the Action.**

"A complaint that only lists a defendant's name in the caption without alleging that the defendant was personally involved in the alleged misconduct fails to state a claim against that defendant." *Camacho-Corona v. Douglas County Dept. of Corrections*, No. 8:12CV132, 2012 WL 3112020, at *3 (D. Neb. July 31, 2012) (*see also Williams v. Newton*, No. 8:09CV282, 2009 WL 4612530, at *4 (D. Neb. Dec. 1, 2009)).

Plaintiff does not assert personal involvement by the Individual Defendants named in the Amended Complaint in any of her causes of action with the exception of the claim of defamation. In fact, all but one of Plaintiff's causes of action arise out of her assertion that she was improperly terminated, and Plaintiff herself alleges that Mr. Sugarman, CEO of COR, not the individual Defendants, made the decision to terminate her employment. (Doc. 19, ¶ 55).

---

such promises. The Agreement contains a clear and unambiguous Modification clause, providing "[n]o modification of the terms and conditions of this Agreement shall be valid **unless in writing and signed by all the parties to the agreement**." (Complaint Ex. A ¶ 18) (emphasis added). Plaintiff has made no argument that any alleged promises complied with these requirements; any alleged reliance is therefore unreasonable as a matter of law. *See, e.g.*, *Wells v. Huish Detergents, Inc.*, 19 F. App'x 168, 175-7, (6th Cir. 2001) (finding as a matter of law "handbook that specifically limited modifications of employment relationship to a written statement from the company president" prevented any reliance upon oral statements allegedly modifying relationship).

The claim in which Plaintiff comes closest to alleging direct personal involvement by either of the individual Defendants is the defamation claim.[10]   Yet even in that claim, Plaintiff asserts that "Defendants, through their agents," allegedly engaged in the wrongful behavior.  (*Id.*, ¶ 81).  This phrasing indicates Plaintiff's claim is asserted against COR and Legent as corporate entities which require agents to act, rather than the individual Defendants.  Even if Plaintiff in fact intends to assert the defamation claim against the individual Defendants, though the language she uses makes that doubtful, she could not proceed.   As fully explained in Section IV.D. above, Plaintiff's claim fails because, to the extent any statements were made, they were demonstrably true based on the allegations of the Complaint; and in any case, Plaintiff has not pled sufficient facts to meet the elements of defamation.

Plaintiff has failed to allege facts showing personal involvement of the individual Defendants in any cause of action that survives a Rule 12(b)(6) inquiry.  Because Plaintiff has not sufficiently alleged claims against them, Messrs. Salas and Frankel should be dismissed from the action entirely.

**G.   Because Plaintiff's Federal Claim Fails To State a Claim, and No Other Basis for Federal Jurisdiction Exists, the Court Should Decline To Exercise Supplemental Jurisdiction and Dismiss Plaintiff's State Claims.**

Plaintiff alleges this Court has original jurisdiction for her Dodd-Frank Act whistleblower claim pursuant to 28 U.S.C. § 1331, jurisdiction for her state law claims pursuant to diversity jurisdiction under 28 U.S.C. § 1332 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

---

[10] The single allegation Plaintiff makes involving Mr. Frankel is that he was "dancing on [her] grave" while she was out of the office.  (Doc. 19, ¶ 52).  The few instances of specific conduct Plaintiff alleges Mr. Salas engaged in do not reflect any defamation or other wrongdoing toward Plaintiff, or even any action outside his official duties.  (*See, e.g.*, *Id.*, ¶ 40 (Mr. Salas "expressed COR's extreme dissatisfaction with the approach taken by Plaintiff" in response to the FINRA examination); *Id.*, ¶ 51 (Mr. Salas "informed Plaintiff that COR had determined that Plaintiff 'needed a vacation'"); *Id.*, ¶ 53 (Mr. Salas informed Plaintiff "she would not be managing any staff" going forward); *Id.*, ¶ 56 (Plaintiff "received a letter from Salas stating her employment with Legent had been terminated for cause").  None of these allegations can be used to infer personal involvement by the individual Defendants in any of Plaintiff's claims, even if those claims were sufficiently pled (which they are not).

As will be explained below, Plaintiff fails to plead the requirements for diversity jurisdiction, and the Court should decline to exercise its supplemental jurisdiction in this case because the only federal cause of action fails to state a claim and should be dismissed.

Jurisdiction pursuant to diversity of citizenship is proper only when "the citizenship of each plaintiff is different from the citizenship of each defendant." *Stewart v. Oursland*, No. 4:12CV3070, 2012 WL 2930057, at *3 (D. Neb. July 18, 2012) (citing to *Ryan v. Schneider Nat'l Carriers, Inc.*, 263 F.3d 816, 819 (8th Cir. 2001)). "[D]iversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff." *Owen Equipment & Errection Co. v. Kroger*, 437 U.S. 365, 373 (1978). "Citizenship is determined by a person's physical presence in a state along with his intent to remain there indefinitely." *Altimore v. Mount Mercy College*, 420 F.3d 763, 768 (8th Cir. 2005) (where plaintiff resided, worked and listed a permanent address in Pennsylvania, he was in fact a citizen of Pennsylvania for purposes of diversity jurisdiction, despite his contention that he was still domiciled in his former state of residence). Where "the very face of [a plaintiff's] complaint" lists his or her address in the same state as the residence of a defendant, "the court . . . lacks diversity of citizenship subject matter jurisdiction over plaintiff's action, as both plaintiff and defendant are residents of the same state." *Dixon v. Nisley*, 840 F. Supp. 49, 51 (1994).

In this case, Plaintiff admits Legent has "its main office and business operations at 9300 Underwood Ave., Suite 400, Omaha, NE 68114." (Doc. 19, ¶ 2). Because Legent's principal place of business is in Nebraska, Legent is considered a citizen of Nebraska.[11] Plaintiff has also specifically pled she is "residing in Omaha, Douglas County, Nebraska." (*Id*., ¶ 1). Although Plaintiff also asserts she is "domiciled in Washington," this is plainly nothing more than an

---

[11] 28 U.S.C. § 1332(c)(1) provides "a corporation shall be deemed to be a citizen . . . of the State where it has its principal place of business . . . ."

improper effort to establish diversity jurisdiction.  (*Id.*).  Plaintiff herself admitted that after she

"accepted employment with Legent," headquartered in Omaha, she "relocated from Washington

to Nebraska.  (*Id.*, ¶ 88).  Further, the signature block attached to every pleading and motion filed

by Plaintiff lists an Omaha, Nebraska mailing address.  (*See, e.g.*, Doc. 19, at p. 18).  Therefore,

because Plaintiff and Defendant Legent are both citizens of Nebraska, the Court lacks diversity

jurisdiction over this matter.

A federal court has discretion to hear state law claims pursuant to supplemental

jurisdiction under 28 U.S.C. § 1367.  However, a district court "may decline to exercise

supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which

it has original jurisdiction."  *Cortez v. Nebraska Beef, Inc.*, 266 F.R.D. 275, 285 (D. Neb. 2010)

(citing to 28 U.S.C. § 1367(c)).  "[P]endent jurisdiction is a doctrine of discretion, not of

plaintiff's right."  *Id.* (internal punctuation omitted).  "The court's discretion 'lies in

considerations of judicial economy, convenience and fairness to litigants . . . .'"  *Id.*  Based on

these considerations, "the Supreme Court has stated that federal courts should usually decline to

exercise supplemental jurisdiction 'when the federal-law claims have dropped out of the lawsuit

in its early stages and only state-law claims remain.'"  *Ashby v. Dyer*, 427 F. Supp. 2d 929, 935

n.13 (D. Neb. 2006) (citing to *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)); *see

also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of

state law should be avoided both as a matter of comity and to promote justice between the

parties, by procuring for them a surer-footed reading of applicable law.").

In this case, Plaintiff's only federal law claim is her first, which purports to assert a claim

for retaliation under the Dodd-Frank Act's whistleblower protection provision, 15 U.S.C.

§ 78u-6.  However, as explained in Section IV.A., above, Plaintiff has failed to state a claim

under the statute, and her sole federal claim must be dismissed.  Because this lawsuit is in its nascent stage, the Court should decline to exercise its supplemental jurisdiction over Plaintiff's five state law causes of action and dismiss the Amended Complaint.

Therefore, because her federal question cause of action fails to state a claim and must be dismissed, and because allegations in Plaintiff's Complaint make clear diversity jurisdiction does not exist, this Court should decline to exercise supplemental jurisdiction over Plaintiff's Nebraska claims.  Plaintiff's entire Complaint should be dismissed.

## V.  CONCLUSION

As outlined above, Plaintiff's first, second, third, fifth and sixth causes of action fail to state a claim upon which relief may be granted.  Even if any of her state claims were viable, the Court should nonetheless decline to exercise supplemental jurisdiction over them because Plaintiff's sole federal claim must be dismissed.  Accordingly, Defendants respectfully request this Court grant their Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and dismiss all of Plaintiff's claims with prejudice.

Dated this 30th day of August, 2012.

                              LEGENT CLEARING, LLC,
                              COR SECURITIES HOLDINGS, INC.,
                              CARLOS P. SALAS, in his Official
                              Capacities, and CHRISTOPHER L.
                              FRANKEL, in his Official Capacities,
                              Defendants.


                         By  s/ Gillian G. O'Hara
                              Marcia A. Washkuhn #21022
                              Gillian G. O'Hara #22414
                              Kasey M. Cappellano #23619
                              KUTAK ROCK LLP
                              The Omaha Building
                              1650 Farnam Street
                              Omaha, NE  68102-2186
                              (402) 346-6000
                              marcia.washkuhn@kutakrock.com
                              gillian.ohara@kutakrock.com
                              kasey.cappellano@kutakrock.com


## CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2012, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system, which will send notification of such filing to the following:

    Julie A. Bussing, *Pro Se*
    951 Crestridge Road
    Omaha, NE  68154
    email@juliebussing.com


                              s/ Gillian G. O'Hara
                              Gillian G. O'Hara