IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JULIE A BUSSING, | |
| Plaintiff, | Case No. 8:12-cv-238-WKU-PRSE |
| v. | |
| COR CLEARING, LLC, and COR SECURITIES HOLDINGS, INC., and CARLOS P. SALAS, and CHRISTOPHER L. FRANKEL, in their Individual Capacities, | **BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT** |
| Defendants. | |

Defendants COR Clearing LLC, COR Securities Holdings, Inc., Carlos P. Salas and Christopher L. Frankel (collectively referred to herein as "Defendants") hereby respectfully submit this Brief in Opposition to Plaintiff's Motion for Leave to File Third Amended Complaint ("Motion to Amend").

## INTRODUCTION

Plaintiff seeks leave to file a Third Amended Complaint[1] to include limited additional factual background and several new theories of recovery, and to add two new defendants. The sole reason provided for seeking leave to amend the Complaint is that Plaintiff's new counsel "has determined that additional amendment is appropriate, particularly because additional claims and defendants have been revealed during review of the case . . . ." (Doc. 63). Plaintiff's Motion to Amend fails to meet the procedural requirements of NECivR 7.1(a)(1)(A) and 15.1.

---

[1] Plaintiff has attached a proposed Third Amended Complaint to her Motion to Amend. Defendants note, however, that while Plaintiff sought leave to file a Second Amended Complaint (Docs. 33 & 34), Plaintiff failed to actually file the Second Amended Complaint. *See* Docket; NECivR 15.1. Thus, the current operative pleading is the Amended Complaint at Filing No. 19.

1

Moreover, permitting Plaintiff to again amend her complaint would be futile because the proposed amendments do not cure the defects in Plaintiff's prior pleadings and her claims, both those previously asserted and the new claims Plaintiff attempts to allege, would not withstand a Motion to Dismiss for failure to state a claim upon which relief can be granted.  Plaintiff's Motion to Amend should also be denied on the grounds of undue delay and bad faith.

Finally, Plaintiff's proposed amended pleading does not correct the deficiencies in her only federal claim; therefore, federal question jurisdiction has not been established.  Because diversity jurisdiction did not exist at the time of the filing of the initial Complaint, Plaintiff's proposed amended pleading cannot provide a basis for this Court's jurisdiction, and Defendants respectfully submit this Court should decline to exercise supplemental jurisdiction over the proposed state law claims.[2]  For these reasons, Plaintiff's Motion to Amend should be denied.

## BACKGROUND FACTS

This litigation arises out of Plaintiff's employment with COR Clearing, LLC ("COR"), formerly known as Legent Clearing, LLC ("Legent"), and specifically the decision by COR to terminate Plaintiff's employment due to performance-related issues on or about May 20, 2012.

Although this case is procedurally in its early stages, significant Motion to Dismiss briefing, and other procedural filings have occurred.  After filing a Complaint and Amended Complaint (Doc. 1 & 19), Defendants moved to dismiss Plaintiff's Amended Complaint in its entirety for failure to state a claim.  (Doc. 26 & 27).  In response to Defendants' Motion to Dismiss, Plaintiff submitted an Opposition to Motion to Dismiss on September 11, 2012, as

---

[2] This brief is filed on behalf of the currently named Defendants COR Clearing LLC, COR Securities Holdings, Inc., Carlos P. Salas and Christopher L. Frankel.  However, the legal arguments made herein regarding the futility of Plaintiff's proposed amendments and the Court's lack of jurisdiction over the state law claims are equally as applicable to the two defendants Plaintiff seeks to add in her proposed Third Amended Complaint.  Moreover, to the extent Plaintiff's theories of recovery fail to state a claim against the currently named defendants, they also fail to state a claim against the two defendants Plaintiff seeks to add.

contemplated and permitted by the Federal Rules of Civil Procedure. (Doc. 28). After Plaintiff's opposition briefing was filed, Defendants duly and timely submitted a Reply Brief in Support of Motion to Dismiss on September 21, 2012 (Doc. 31), followed by a Supplemental Reply Brief as permitted by the Court. (Doc.46).

Following the submission of Defendants' initial Reply Brief, which typically ends briefing on a Motion to Dismiss, Plaintiff subsequently filed a Reply Brief in Support of Opposition to Motion to Dismiss (Doc. 32), a Revised Brief in Opposition to Defendants' Motion to Dismiss (Doc. 38), and a Final Revised Brief in Opposition to Motion to Dismiss (Doc. 42), all of which were accepted by the Court.

In the midst of these filings, and after already having filed a Complaint and Amended Complaint, Plaintiff filed a Motion to Amend the Complaint and Correct Pleadings, along with a copy of a Second Amended Complaint (Docs. 33 & 34). While the Court granted Plaintiff's Motion (Doc. 41), Plaintiff failed to timely file the Second Amended Complaint pursuant to the Court's order. (Docket). Now, Plaintiff again seeks to amend her complaint, and attaches a proposed Third Amended Complaint to her Motion to Amend. (Doc. 63-1).

As a threshold matter, Plaintiff's Motion to Amend Complaint fails to "state the proposed amendments" as required by NECivR 15.1(a). A review of the proposed Third Amended Complaint attached to the Motion reveals the addition of two defendants – Steven Sugarman and Jeffrey Sime – and seven new theories of recovery: (1) Breach of the Covenant of Good Faith and Fair Dealing; (2) Fraudulent Inducement; (3) Fraudulent Misrepresentation; (4) Fraudulent Concealment; (5) Negligent Misrepresentation; (6) Tortious Interference; and (7) Negligence. (Proposed Third Amended Complaint ¶¶ 97 – 101; 107 – 143). Plaintiff also re-asserts the following theories of recovery against Defendants: Retaliation in Violation of 15 U.S.C. § 78u-6;

Violation of Neb. Rev. Stat. §§ 20-148 and 48-1114(3); Wrongful Termination in Violation of Public Policy; Breach of Contract; and Defamation.  (Proposed Third Amended Complaint ¶¶ 75 – 96; 102 – 106).

Plaintiff's proposed Third Amended Complaint contains several stylistic changes to the prior allegations and adds some additional factual background, including the following:[3]

- Plaintiff adds allegations that she entered into a verbal employment agreement with Legent and includes some terms of that agreement.  (Proposed Third Amended Complaint ¶¶ 26 – 27).  Plaintiff further asserts the employment agreement she subsequently entered into with Legent "did not accurately reflect the verbal employment agreement that Bussing and Legent had previously negotiated and operated under." (Proposed Third Amended Complaint ¶ 44).

- Plaintiff alleges that "[i]n the course of preparing [the Rule 8210 Document Request] and in discussing matters with other Legent employees, she identified several potential or existing violations of FINRA rules and federal securities laws, including significant violations of the Bank Security Act and anti-money laundering provisions that would likely be revealed to FINRA during their visit to Legent's upcoming offices." (Proposed Third Amended Complaint ¶ 49).

- Plaintiff makes new allegations regarding the support she received from COR personnel (Proposed Third Amended Complaint ¶¶ 52 & 53) and the actions Plaintiff took to perform audits and account reviews, including an audit of all third-party foreign wires during 2011 and 2012.  (Proposed Third Amended Complaint ¶ 55).

---

[3] By setting forth these proposed allegations, Defendants are in no way admitting or conceding the truth or accuracy of these allegations.

- Plaintiff alleges that Legent retained criminal counsel, who participated in FINRA's onsite examination at Legent's Omaha office from April 30 – May 3, 2012.  (Proposed Third Amended Complaint ¶ 67).

- Plaintiff adds that "members of COR and Legent management, including but not limited to Sugarman, Salas, and Frankel" communicated that Plaintiff had been fired as of May 4, 2012 to Legent staff members or, at the very least, were aware such statements were being made, but failed to correct the statements.  (Proposed Third Amended Complaint ¶ 69).

## ARGUMENT

### I.    Standard for Motion for Leave to Amend Complaint

After the time for amending a pleading as a matter of course has expired, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).  Courts should "freely give leave" to amend, but only "when justice so requires." *Id.*  "A denial of leave to amend may be justified by undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party." *Amrine v. Brooks,* 522 F.3d 823, 833 (8th Cir.2008) (internal quotation marks and citation omitted). "There is no absolute right to amend," *Bediako v. Stein Mart, Inc.,* 354 F.3d 835, 841 (8th Cir. 2004) (internal quotation marks and citation omitted), and a district court has "'broad discretion'" when deciding whether to grant or deny a party's request for leave to amend pursuant to Rule 15.  *Turley v. Coventry Health Care of Iowa, Inc.,* 590 F. Supp. 2d 1126, 1128 (S.D. Iowa 2008) (quoting *Baptist Health v. Smith,* 477 F.3d 540, 544 (8th Cir. 2007)).  "Leave to amend should be denied as futile 'where the proposed amendment would not cure the defect the party sought to correct.'"  *LOL Finance Co. v. Johnson,* No. 4:09cv3224, 2010 WL 4386491, at *2 (D. Neb. Oct. 27, 2010).

5

## II.     Plaintiff Has Failed to Comply with the Procedural Requirements Necessary for Seeking Leave to Amend a Complaint.

On June 6, 2013, Plaintiff filed a short Motion to Amend Complaint, along with a Proposed Third Amended Complaint.  (Doc 63).  The sole reason given for seeking leave to amend her Complaint is that her new counsel "has determined that additional amendment is appropriate, particularly because additional claims and defendants have been revealed during review of the case . . . ."  (Doc. 63 at p. 2).  Plaintiff did not file a Brief in Support of her Motion to Amend, despite the requirement that "[a] motion raising a substantial issue of law must be supported by a brief filed and served together with the motion."  NECivR 7.1(a)(1)(A).  Thus, Plaintiff has not demonstrated "'how the complaint could be amended to save the meritless claim[s].'"  *Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 783-84 (8th Cir. 2008).  Furthermore, "[i]f the moving party does not file an initial brief, it may not file a reply brief without the court's leave."  NECivR 7.1(c).

In addition, Plaintiff's Motion to Amend did not comply with NECivR 15.1  The Nebraska local rules require a party who moves for leave to amend a pleading to "(1) specifically state the proposed amendments and (2) state whether the motion is unopposed or opposed, after conferring with opposing parties."  NECivR 15.1(a).  Plaintiff's Motion does neither. Accordingly, Defendants respectfully submit Plaintiff's Motion to Amend should be denied on the grounds that it fails to comply with the procedural requirements in NECivR 7.1 and 15.1.

## III.     Plaintiff's Motion to Amend Should be Denied Because Plaintiff's Claims, Even as Amended, Would Not Survive a Motion to Dismiss, Thus Rendering Amendment Futile

Leave to amend a complaint can be denied where amendment would be futile.  *Stricker v. Union Planters Bank, N.A.*, 436 F.3d 875, 878 (8th Cir. 2006); *Doe v. Cassel*, 403 F.3d 986, 990-91 (8th Cir. 2005).  "'Generally, parties should not be allowed to amend their complaint without

6

4833-8583-1700.3

showing how the complaint could be amended to save the meritless claim.'" *Cornelia I. Crowell GST Trust*, 519 F.3d at 783-84. "[W]hen the court denies leave on the basis of futility, it means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure . . . ." *Id*. at 781-82.

In deciding a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), courts assume as true all well-pleaded factual allegations and then determine whether such allegations plausibly give rise to an entitlement of relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). To survive a motion to dismiss, the factual allegations in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must be dismissed if it does not plead "enough facts to state a claim top relief that is plausible on its face." *Id*. at 570. If the plaintiff "ha[s] not nudged [her] claims across the line from conceivable to plausible, [her] complaint must be dismissed." *Id*. at 547.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. While a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citation and punctuation omitted).

When ruling on a motion to dismiss, courts must take a complaint's allegations as true and liberally construe the complaint in a light most favorable to the plaintiff. *Kottschade v. City*

*of Rochester*, 319 F.3d 1038, 1040 (8th Cir. 2003).  Courts are "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations."  *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002).

In this instance, the proposed Third Amended Complaint does not offer any new facts or theories that create plausible claims against Defendants.   In other words, the majority of Plaintiff's Proposed Third Amended Complaint would still be subject to dismissal under Fed. R. Civ. P. 12(b)(6), even if the Court considered the facts and theories of recovery set forth in the proposed Third Amended Complaint.[4]

> ### A.   Plaintiff Has Not Engaged in Protected Activity Under the Dodd-Frank Act; Therefore, She Cannot State a Claim for Whistleblower Retaliation in Her First Cause of Action.

Plaintiff's first proposed cause of action alleges retaliation for whistleblowing under the Dodd-Frank Act's recently enacted whistleblower protection provision, 15 U.S.C. § 78u-6. (Doc. 63-1, ¶¶ 75-79).  Plaintiff contends she was retaliated against for "compliance with the Rule 8210 Document Request, cooperation during the FINRA examination and investigation, and preparation of her report regarding Bank Security Act and anti-money laundering violations."  (*Id.*, ¶ 76)  However, based on Plaintiff's own allegations, even as amended, this conduct is not protected activity under the Dodd-Frank Act.

The  Dodd-Frank  Act  defines  a  whistleblower  as  an  individual  "who provides . . . information relating to a violation of the securities laws to the [Securities and Exchange] Commission, in a manner established, by rule or regulation, by the Commission." 15 U.S.C. § 78u-6(a)(6); *see also* 15 U.S.C. § 78c(a)(15) (defining the term "Commission" to

---

[4] To the extent Plaintiff may have sufficiently pled the bare elements necessary to state her claim for breach of contract or breach of the implied covenant of good faith and fair dealing, Defendants request these state claims be dismissed because there is a failure of federal question jurisdiction and the Court should decline to exercise supplemental jurisdiction.

mean the "Securities and Exchange Commission.")  The whistleblower protection provision provides, in relevant part:

> No employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower—(i) in providing information to the Commission in accordance with this section; (ii) in initiating, testifying in, or assisting in any investigation or judicial or administrative action of the Commission based upon or related to such information; or (iii) in making disclosures that are required or protected under the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201 et seq.), the Securities Exchange Act of 1934 (15 U.S.C. 78a et seq.), including section 10A(m) of such Act (15 U.S.C. 78f(m)), section 1513(e) of Title 18, and any other law, rule, or regulation subject to the jurisdiction of the Commission.

15 U.S.C. § 78u-6(h)(1)(A).

Defendants submit Plaintiff's attempt to amend her Complaint to assert violations of 15 U.S.C. § 78u-6(h)(1)(A) is futile because her proposed Third Amended Complaint offers no facts sufficient to support a claim of Dodd-Frank whistleblower retaliation that is plausible on its face.

### 1.      Plaintiff is Not Entitled Protection Under 15 U.S.C. § 78u-6(h)(1)(A)(i) and (ii)

The first two prongs of 15 U.S.C. § 78u-6(h)(1)(A) prohibit retaliation against an individual who "provid[es] information to the Commission in accordance with this section" or who "initiat[es], testif[ies] in[] or assist[s] in any investigation or judicial or administrative action . . . ." Thus, "the first two anti-retaliation categories protect whistleblowers . . . **who work with the SEC directly**, in some manner, concerning potential security violations." *See Nollner v. Southern Baptist Convention, Inc*, 852 F. Supp. 2d 986, 993 (M.D. Tenn. 2012) (emphasis supplied) (granting motion to dismiss whistleblower claim arising from internal report).

Plaintiff's proposed Third Amended Complaint cannot state a claim under the first two prongs of 15 U.S.C. § 78u-6(h)(1)(A) because Plaintiff does not allege in her amended pleading that she provided information to the SEC, or initiated, testified in, or assisted in an investigation

of the SEC.  Moreover, Plaintiff does not allege in her proposed Third Amended Complaint that the SEC directed, prompted or was involved in any investigation conducted by the Financial Industry Regulatory Authority, Inc. ("FINRA"), which is a private corporation separate from the government organization of the SEC, with different rules and different investigatory and enforcement procedures.[5]  *See generally,* FINRA Rules 100 *et seq.*; 17 C.F.R. §§ 240, *et seq.*; *Wachovia Sec., LLC v. Brand*, 671 F.3d 472, 475 at fn.2 (4th Cir. 2012) ("FINRA is a private corporation that succeeded the National Association of Securities Dealers [("NASD")] and the enforcement divisions of the New York Stock Exchange as the self-regulatory organization for the securities industry").   Plaintiff has not made any allegation she worked **directly** with the SEC, as required to assert a valid whistleblower protection claim.  Providing information to, or initiating, testifying or assisting in an investigation by FINRA is not the same thing as providing information to, or initiating, testifying or assisting in an investigation by the SEC, and courts that have considered this argument have found it lacking.  *See Egan v. TradingScreen, Inc.*, No. 10 Civ. 8202 (LBS), 2011 WL 1672066, at *3-5 (S.D.N.Y. May 4, 2011) (interpreting the first two prongs of the Dodd-Frank Act as requiring communications be made "to the Commission" for purpose of whistleblower protection, stating: "the anti-retaliation provisions of the Dodd-Frank Act explicitly prohibit retaliation against whistleblowers who provide information and testimony *to the SEC*.").

In summary, Plaintiff's proposed Third Amended Complaint does not provide any additional allegations upon which a finding could be made that Plaintiff provided information to, or participated in some investigation or judicial or administrative action by, the SEC. Accordingly, even if Plaintiff's Motion to Amend is granted by the Court, the proposed Third Amended Complaint fails to establish a plausible cause of action under the first two prongs of 15

---

[5] *See* http://www.finra.org/AboutFINRA/.

4833-8583-1700.3

U.S.C. § 78u-6(h)(1)(A)(i)-(ii) because Plaintiff has not and cannot provide facts to support direct communications with the SEC.   Accordingly, Plaintiff is not a "whistleblower" and amendment would be futile.

> ### 2.      Plaintiff is Not Entitled to Protection Under 15 U.S.C. § 78u-6(h)(1)(A)(iii)

Likewise, Plaintiff does not allege facts in her proposed Third Amended Complaint to credibly support a claim under the third prong of the Act, which requires the "making [of] disclosures that are required or protected" under the securities laws identified in that prong. *See* 15 U.S.C. § 78u-6(h)(1)(A)(iii).

The only rule specifically cited by Plaintiff in support of her claim pursuant to 15 U.S.C. § 78u-6(h)(1)(A)(iii) is FINRA Rule 8210, which governs the provision of information and testimony by FINRA members and the inspection and copying of books by FINRA.  (FINRA Rule 8210).  FINRA rules are separate from SEC rules, and are enforced initially by FINRA, not the SEC.  In any event, and very significantly, Plaintiff's proposed Third Amended Complaint is wholly devoid of any allegation that Plaintiff made disclosures required or protected by a specified rule or regulation within the SEC's jurisdiction.

While Plaintiff asserts that she began "preparing a response to the Rule 8210 document request" (Proposed Third Amended Complaint ¶ 50), Plaintiff has not alleged that she made <u>any</u> "disclosure" required or protected by FINRA Rule 8210.  Plaintiff's only assertions relating to the Rule 8210 Document Request are that FINRA was "at Legent's Omaha office from April 30 to May 3, 2012, and examined **Legent's** response to the Rule 8210 Document Request" and that Plaintiff "**participated** in the onsite exam."   (Proposed Third Amended Complaint ¶ 66) (emphasis supplied).  Nowhere does Plaintiff assert that she personally made any disclosures required or protected by FINRA Rule 8210 as necessary to invoke the protections of 15 U.S.C. §

11

78u-6(h)(1)(A)(iii).  Defendants submit that, to interpret the Dodd-Frank Act so broadly as to protect individuals who simply gather documentation for FINRA to inspect without that individual affirmatively disclosing information specific to a particular violation, would be an abuse of the protections provided by the Dodd-Frank Act.

To the extent Plaintiff is relying upon the "report" she prepared addressing asserted violations of the Bank Security Act and "anti-money laundering provisions," this "report" was not *required or protected* by FINRA Rule 8210, the only rule potentially falling with the SEC's jurisdiction specifically cited by Plaintiff in her proposed Third Amended Complaint, and Plaintiff does not attempt to assert that the "report" was required or protected by Rule 8210.   As one court has stated, "[m]erely alleging the violation of a law or rule under the SEC's purview is not enough; a plaintiff must allege that a law or rule in the SEC's jurisdiction explicitly requires or protects disclosure of that violation."  *Egan*, 2011 WL 1672066, at *6.  FINRA Rule 8210 authorizes FINRA to inspect and copy the books, records and accounts of member firms and associated persons.  (FINRA Rule 8210).  The focus of the Rule 8210 Document Request was a review of "Legent Clearing", not of Plaintiff individually as an associated person, and did not require the preparation of any report or the disclosure of any violation of law.  Further, there is no allegation that any of the alleged violations in her "report" were communicated or disclosed to FINRA at any time during the investigation.  Thus, the protections of 15 U.S.C. § 78u-6(h)(1)(A)(iii) are not invoked.

Further, Plaintiff's proposed Third Amended Complaint does not cite to any rule or regulation under the SEC's jurisdiction that requires or protects the disclosure of the alleged information provided by Plaintiff of any "report" and, accordingly, Plaintiff has not stated a claim upon which relief can be granted, under this prong; thus, her request to amend related to

4833-8583-1700.3

this claim is futile. Any general reference to a potential violation, without more, is insufficient. *See Asadi v. G.E. Energy (USA), LLC*, Civil Action No. 4:12–345, 2012 WL 2522599, at *6 (S.D. Tex., June 28, 2012) (granting a motion to dismiss because plaintiff "cited the Court to no provision of the FCPA that 'protects' or 'requires' his internal report of the alleged bribery," and held that "the Provision does not protect [plaintiff] against retaliation for his disclosure of the alleged bribery.").

Because Plaintiff cannot succeed on a claim of whistleblower retaliation under any of the provisions of the Dodd-Frank Act, 15 U.S.C. § 78u-6(h)(1)(A), Defendants respectfully submit her attempt to amend her complaint is futile, and should thus be denied.

> **B.    Neb. Rev. Stat. § 20-148 Is Limited to State Civil Rights Claims and Cannot Be Used To Assert a Whistleblower Claim Pursuant to Federal Law.**

Plaintiff's second claim in her proposed Third Amended Complaint attempts to assert a claim under Neb. Rev. Stat. § 20-148 for alleged retaliation in violation of Neb. Rev. Stat. § 48-1114(3).  The claimed retaliation is based on Plaintiff's purported "compliance with the Rule 8210 Document Request, cooperation during the FINRA examination and investigation, directives to cease processing penny stock certificates, and preparation of her report regarding Bank Security Act and anti-money laundering violations."  (Doc. 63-1, ¶ 82).  Even in her proposed amended pleading, Plaintiff has not properly pled a Section 20-148 claim.

Neb. Rev. Stat. § 20-148 is a "procedural statute which does not create any new substantive rights." *Goolsby v. Anderson*, 549 N.W.2d 153, 157 (Neb. 1996).  Rather, Section 20-148 was enacted to provide plaintiffs the opportunity to vindicate rights already existing under constitutional or Nebraska civil rights laws. *See Goolsby*, 549 N.W.2d at 158.  The statute provides, in relevant part:

13

> Any person or company . . . who subjects or causes to be subjected any citizen of this state . . . to the deprivation of any rights, privileges, or immunities secured by the United States Constitution or the Constitution and laws of the State of Nebraska, shall be liable to such injure [sic] person in a civil action . . . .

Neb. Rev. Stat. § 20-148(1).

The Eighth Circuit, relying upon the statute's legislative history, has found the specific and limited purpose of Section 20-148(1) was to "allow people who have **complaints of discrimination** to go into court rather than being compelled to go only through the Equal Opportunity Commission." *Karstens v. Int. Gamco, Inc.*, 939 F. Supp. 1430, 1439 (D. Neb. 1996) (emphasis added) (citing to *Ritchie v. Walker Mfg. Co.*, 963 F.2d 1119, 1122 (8th Cir. 1992) and Floor Debate, L.B. 66, Judiciary Committee, 86th Leg., 1st Sess. 434-35 (Feb. 11, 1977)). In other words, Section 20-148, was created as an alternative method for pursuing civil rights claims that are defined elsewhere in constitutional or statutory law." *Id. See also Buzek v. Pawnee County, Nebraska*, 207 F. Supp. 2d 961, 965 (2002) (finding the complaint must be "construed to allege a deprivation of [plaintiff's] civil rights" in order to allow the plaintiff to bring suit pursuant to Neb. Rev. Stat. § 20-148).

Plainly, then, Neb. Rev. Stat. § 20-148 was enacted for and applies only to civil rights claims, which are most commonly claims asserted against employers for violations of an employee's civil rights, and to allow direct access to the courts without first requiring the filing of an administrative charge or complaint with the Nebraska Equal Opportunity Commission. *See, e.g.*, *Goolsby*, 549 N.W.2d at 153 (claim for sexual harassment in workplace properly brought under Neb. Rev. Stat. § 20-148); *Karstens*, 939 F. Supp. at 1430 (same). If this were not the case, Section 20-148 would create a separate, private right of action for each section of every Nebraska state law, which is plainly not what the drafters intended.

14

In addition, by its plain language, Neb. Rev. Stat. § 20-148 provides a remedy only for civil rights violations arising out of the United States Constitution or Nebraska state law. It does not provide a remedy for any federal law, with the sole exception of the United States Constitution. The drafting thus intentionally limits the scope of Section 20-148 to violations of state civil rights laws and the U.S. Constitution, and does not contemplate the violation of any federal law.

Here, Plaintiff attempts to assert a claim through Neb. Rev. Stat. § 20-148 for an alleged violation of the Dodd-Frank Act in her proposed Third Amended Complaint. (Doc. 63-1 ¶ 81). Even as amended, however, Plaintiff has not pled that she was subjected to a state civil rights violation or a violation of her constitutional rights in her proposed amended pleading. Indeed, she does not allege a claim arising from violation of any Nebraska law – instead, her claim is based entirely on 15 U.S.C. § 78u-6, a federal statute with no state analogue.

Because Section 20-148 was intended to apply only to constitutional and state civil rights violations, and because Plaintiff also fails entirely to allege any state civil rights law under which her rights were violated, permitting Plaintiff to amend her complaint would be futile, as Plaintiff's proposed Third Amended Complaint still fails to state a claim against Defendants upon which relief can be granted.

C.   **Plaintiff's Third Cause of Action, Wrongful Termination in Violation of Public Policy, Fails Because She Does Not Plead Any State Public Policy Violation and Because Violation of a Federal Statute Is Not Recognized State Public Policy.**

Plaintiff's proposed Third Amended Complaint does not cure the deficiencies in her prior pleadings with regard to her allegations of Wrongful Termination, thus making any attempted amendment futile.

15

"The clear and oft-cited rule . . . is that unless constitutionally, statutorily, or contractually prohibited, an employer, without incurring liability, may terminate an at-will employee at any time with or without reason." *Malone v. American Bus. Inf.* 634 N.W.2d 788, 790 (Neb. 2001). Nebraska courts, however, recognize a public policy exception to the at-will employment doctrine when the motivation for firing the employee contravenes the state's public policy. *See Ambroz v. Cornhusker Square Ltd.*, 416 N.W.2d 510, 513 (Neb. 1987) (finding employee was terminated against public policy after he refused to submit to a polygraph examination; Neb. Rev. Stat. § 81-1932 (Reissue 1999), which provides in part that "[n]o employer or prospective employer may require as a condition of employment or as a condition for continued employment that a person submit to a truth and deception examination. . . ." created the public policy upon which the court's decisions were based).

Though Nebraska courts recognize a public policy exception to the employment-at-will doctrine, it is "a very narrow exception." *See Reed v. Great Western Bank*, No. 8:08CV245, 2008 WL 4224113, at *2 (D. Neb. Sept. 9, 2008). In fact, the Nebraska Supreme Court cautioned that "it [is] important that abusive discharge claims of employees at will be limited to 'manageable and clear standards.'" *Wendeln v. Beatrice Manor, Inc.*, 712 N.W.2d 226, 238 (Neb. 2006) (quoted case omitted). It is clear, however, that a plaintiff asserting a claim for wrongful discharge in violation of Nebraska public policy must identify state public policy claimed to be at issue. *Gomez v. Cargill, Inc.*, No. 4:06CV3181, 2006 WL 3257184, *1-2 (D. Neb. Nov. 9, 2006) (dismissing claim where Plaintiff failed to "articulate a statutory or criminal violation or a broad, comprehensive statutory scheme that would constitute a 'clear expression of public policy' for purposes of a wrongful discharge claim.")

Moreover, Nebraska courts have not found that a **federal law**, like 15 U.S.C. § 78u-6, can support a public policy exception to the at-will employment doctrine.  Other courts, however, have found federal statutes do not establish a public policy for their respective states. *See McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283, 289 (Pa. 2000) (dismissing public policy claim, and stating that, "in order to set forth a claim for wrongful discharge a [p]laintiff must do more than show a possible violation of a federal statute that implicates only her own personal interest.  The [p]laintiff in some way must allege that some *public policy* of *this Commonwealth* is implicated, undermined, or violated because of the employer's termination of the employee.  Public policy of this Commonwealth must be just that, the policy of this Commonwealth.") (emphasis added).  *See also Szaller v. American Nat'l Red Cross*, 293 F.3d 148 (4th Cir. 2002) (federal FDA regulations did not represent clear mandate of Maryland public policy for purposes of claim by employee discharged for reporting deficiencies in employer's blood-handling procedures); *Torrez v. City of Scottsdale*, No. cv-96-07667, 1997 WL 580326 at *1 (Ariz. Super. July 15, 1997) (neither federal statutes nor municipal ordinances are cognizable sources; courts look to "the pronouncements of our founders, our legislature, and our courts to discern the public policy of this state").

Here, Plaintiff's proposed third claim is entitled "Wrongful Termination in Violation of Public Policy."  (Doc. 63-1, ¶¶ 85 - 89).  Plaintiff's proposed Third Amended Complaint fails to identify any state statute or law which is a clear expression of public policy sufficient to support such a claim, and how Defendants have violated this policy.[6]  However, to the extent the claim is based on an alleged federal violation, no such public policy claim has been recognized in

---

[6] Similarly, to the extent Plaintiff asserts her termination was a violation of Nebraska public policy as expressed in the NFEPA's prohibition against retaliation, Nebraska courts have held the NFEPA cannot be the basis for a claim for wrongful termination.  *Riggs v. Cty of Banner*, 159 F. Supp. 2d 1158, 1171, n.16 (D. Neb. 2001) (citing to *Andersen v. American Red Cross-Midwest Region Blood Serv*, No. A-96-588, 1997 WL 627610 (Neb. Ct. App. Oct. 10, 1997)).

17

Nebraska, and 15 U.S.C. § 78u-6 does not establish any clear, mandated public policy for the state of Nebraska.  Accordingly, permitting Plaintiff to amend her complaint would be futile.

> **D.      Plaintiff Has Not Alleged Any False Statement Was Made and the Form U5 Was Protected by Privilege; Therefore, She Cannot Proceed on Her Claim for Defamation.**

In her proposed Third Amended Complaint, Plaintiff asserts that Defendants defamed Plaintiff by publishing false and defamatory statements concerning Plaintiff's employment status with Legent.  However, the allegations made by Plaintiff, even as amended, fail to allege facts necessary to sufficiently state a claim for defamation, thus rendering the proposed amendment futile.

"[A] claim of defamation requires (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged publication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication."  *Moats v. Republican Party of Nebraska*, 796 N.W.2d 584, 593 (Neb. 2011).  "As the falsity of the statement is an element of a claim of defamation, a finding of truth results in the failure of the plaintiff to prove his or her case."  *Norris v. Hathaway*, No. A-97-916, 1999 WL 14488, at *3 (Neb. Ct. App. Jan. 5, 1999).  *See also DeLay First Nat. Bank & Trust Co. v. Jacobson Appliance Co.*, 243 N.W.2d 745, 752 (Neb. 1976) ("As applied to libel of one in his business or occupation," "truth in everything stated" will defeat a claim of defamation).

In this case, Plaintiff apparently contends Mr. Frankel was "dancing on [her] grave" while she was on leave and that "she heard from various Legent staff members that she had been fired as of May 4, 2012" (Proposed Third Amended Complaint ¶ 69).  Plaintiff further alleges "[u]pon information and belief, these items were communicated to Legent staff by members of COR and Legent management, including but not limited to Sugarman, Salas, and Frankel.  At a

minimum, members of COR and Legent management, including but not limited to Sugarman, Salas, and Frankel were aware of these statements but failed to address them." (*Id*.).  None of these allegations indicates that an affirmative communication of any false statement about Plaintiff was ever made by any representative of COR or Legent, or that the statements arose from anything other than her own absence.  Plaintiff likewise fails to plead or set forth individuals to whom any such statements were allegedly made, other than to "Legent staff." (Proposed Third Amended Complaint ¶ 69).  Without alleging a statement published to a specific individual or individuals, Plaintiff has not stated a claim for defamation.

In addition, as noted above, truth is a defense to a claim of defamation.  It is undisputed that Plaintiff was, in fact, terminated on May 20, 2012 (*Id*., ¶ 55), which precludes her from asserting defamation based on any alleged statement that she had been fired, even if she could plead sufficient facts regarding the publication of such a statement (though she cannot).

Finally, Plaintiff asserts in her proposed Third Amended Complaint that "false and defamatory statements concerning Bussing's employment status with Legent and the reasons for Bussing's termination from employment with Legent" were made on Bussing's Form U5, and seeks an order form the Court requiring the amendment of Bussing's Form U5.  (Proposed Third Amended Complaint ¶ 103; Prayer for Relief).  Plaintiff's Form U5 indicated her discharge was because she "did not perform position consistent with company expectations."  (*Id*., ¶ 74). Plaintiff does not dispute that she was terminated; thus, she apparently takes issue with the stated reason for the discharge.

First, this statement cannot be construed as false given the allegations in Plaintiff's proposed Third Amended Complaint, wherein she alleges Mr. Salas expressed "dissatisfaction with the response to the Rule 8210 Document Request and the decision that Legent cease

processing penny stock certificates." (Proposed Third Amended Complaint ¶ 56). She further alleges Legent's Chief Financial Officer, Jeff Sime, was extremely displeased with the way Plaintiff was discharging her duties in relation to the FINRA examination. (*Id.*, ¶ 59 & 59). Furthermore, before the separation of her employment, Plaintiff alleges she was told by the company that her position needed to be "significantly changed" and she would not be managing any employees, which Plaintiff "contested" before her employment was ultimately terminated. (*Id.*, ¶¶68, 70 & 71). Plaintiff, therefore, has tacitly admitted through her allegations that Defendants had a legitimate belief that she was not meeting their expectations for the position she held. Moreover, there are no facts alleged that indicate the stated reason on the Form U5 was false. Thus, Plaintiff has not pled sufficient facts to state a claim to relief that is plausible on its face, even in her Proposed Third Amended Complaint.

Second, Legent's Form U5 reporting obligations are protected by privilege. Form U5 reporting is nondiscretionary. *Rosenberg v. Metlife, Inc.*, 866 N.E.2d 439, 444 (N.Y. Ct. App. 2007) ("The Form U-5 plays a significant role in the NASD's self-regulatory process. Filing is mandatory within 30 days of termination of the registered representative and firms are subject to penalties should they fail to comply.") Because Legent is required to file the Form U5, some states have found that reporting contained in the Form U5 is absolutely privileged. *See Rosenberg*, 866 N.E. 2d at 444 ("The Form U-5's compulsory nature and its role in the NASD's quasi-judicial process, together with the protection of public interests, lead us to conclude that statements made by an employer on the form should be subject to an absolute privilege"); *Culver v. Merrill Lynch & Co.*, No. 94 Civ. 8124, 1995 WL 422203, at *5 (S.D.N.Y. July 17, 1995) (granting a motion to dismiss U5 defamation claim on the grounds that the termination notice was absolutely privileged because it was made in the course of a quasi-judicial proceeding, was

20

material and pertinent to the reasons for the employee's termination, and there was no allegation of malice).  Other states recognize a qualified privilege for Form U5 reporting obligations, which permits defamation claims for reporting obligations only when made "with knowledge that the statements are false or with reckless disregard of whether they were false or not."  *Hilliard v. Reisen*, No. 1:09-cv-535, 2010 WL 793850, at *5 (S.D. Ohio March 2, 2010).  While Plaintiff alleges the statements on her Form U5 were made with "actual malice," her own pleadings demonstrating the concern Defendants had with her employment prior to termination negate such an averment.

Accordingly, even as amended, Plaintiff cannot state a claim for defamation in the proposed Third Amending Complaint.  Thus, defendants respectfully submit permitting such amendment would be futile.

> **E.     Plaintiff's Claims for Fraudulent Inducement, Fraudulent Misrepresentation, Fraudulent Concealment, and Negligent Misrepresentation Would Not Withstand a Motion to Dismiss based on Rule 9(b) of the Federal Rules of Civil Procedure**

In her proposed Third Amended Complaint, Plaintiff seeks to bring claims for fraudulent inducement, fraudulent misrepresentation, fraudulent concealment, and negligent misrepresentation.  As pled by Plaintiff, however, these claims fail to meet the heightened pleading standard for fraud claims required by Rule 9(b) of the Federal Rules of Civil Procedure.  Therefore, permitting amendment of Plaintiff's complaint to allow her to assert such claims would be futile given that her proposed Third Amended Complaint would not withstand a motion to dismiss.

Rule 9(b) of the Federal Rules of Civil Procedure requires that, "[i]n alleging fraud or mistake, a party must state with **particularity the circumstances constituting fraud** or mistake.

Malice, intent, knowledge, and other conditions or a person's mind may be alleged generally."

Fed. R. Civ. P. 9(b) (emphasis supplied).  As articulated by the Eighth Circuit,

> Under Rule 9(b), the circumstances constituting fraud ... shall be stated with particularity. Rule 9(b)'s particularity requirement demands a higher degree of notice than that required for other claims, and is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations. To satisfy the particularity requirement of Rule 9(b), the complaint must plead such facts as the **time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result.** Put another way, the complaint must identify the "who, what, where, when and how" of the alleged fraud.

*United States ex rel. Joshi v. St. Luke's Hosp., Inc.,* 441 F.3d 552, 556 (8th Cir. 2006) (internal citations omitted) (emphasis supplied). The Eighth Circuit has further stated that "[c]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy [Rule 9(b)]." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007).   In addition to claims based on allegations of fraud, "[a] claim of negligent misrepresentation is subject to Rule 9(b), which requires the pleading of matters including the time, place, content, and source of alleged misrepresentations."  *Farm Credit Serv. of America, PCA v. Haun*, No. 8:11cv320, 2012 WL 3201894 at *5 (D. Neb. Aug. 3, 2012).

Plaintiff's proposed Third Amended Complaint is devoid of any allegations of fraud or misrepresentation sufficient to meet the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.   In Plaintiff's proposed claims for fraudulent inducement, fraudulent misrepresentation, and fraudulent concealment, Plaintiff attempts to assert that Defendants made various alleged representations.  (Proposed Third Amended Complaint ¶¶ 108, 115. & 122).  At the most basic level, Plaintiff's proposed fraud-based claims fail because she has not alleged or asserted any facts to demonstrate that these alleged representations were false. While Plaintiff makes the conclusory statement that "Defendants' representations were false"

(Proposed Third Amended Complaint ¶¶ 109 & 116), "[c]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy [Rule 9(b**]." *BJC Health Sys.*, 478 F.3d at 917.  A review of the proposed Third Amended Complaint reveals that Plaintiff has made no attempt to support her statement that such representations were false with any factual detail or background whatsoever.

In fact, the assertion by Plaintiff that certain of the apparent representations were false is in direct contradiction to her own pleading in this matter, in which she admits the truth of the alleged statements by Defendants.  For example, Plaintiff claims, in conclusory fashion, that Defendants' representation that she would be authorized to implement her Change of Control Plan was false.  (Proposed Third Amended Complaint ¶¶ 108(a) & 115(a) & 122(a)).  However, Plaintiff's proposed Third Amended Complaint affirmatively alleges that, after she commenced employment with Legent, she began implementing the Change of Control Plan, and that "Legent's profitability was based in whole or in part on Bussing's work and **implementation of the Change of Control Plan.**"  (Proposed Third Amended Complaint ¶ 34 (emphasis supplied); *see also* ¶¶ 30 – 34).

A second example of Plaintiff's contradictory pleading can be found in Plaintiffs' assertion that the representation she would be "allowed and required to comply with all applicable federal, state, and local laws, regulations, and ordinances" was false.  A statement that this representation was false is contrary to Plaintiff's own assertion that FINRA attended Legent's Omaha office from April 30 to May 3, 2012 and examined Legent's response to the Rule 8210 Document Request.  (Proposed Third Amended Complaint ¶ 66).  These actions demonstrate compliance with the applicable FINRA rule Plaintiff contends are at issue in this litigation.

As a final example, Plaintiff asserts the representation that she would assume duties as President of Legent after Mr. Frankel was transitioned out of management was false. However, this allegation is directly contrary to the employment agreement signed by Plaintiff, attached to her proposed Third Amended Complaint as Exhibit A, which specifically states she would hold the position of Executive Vice President for the initial three-year term of her employment.

Plaintiff's failure to allege any factual basis to support the supposed falsity of the representations she claims were made by Defendants is not the only deficiency in Plaintiff's proposed fraud based claims. Plaintiff's proposed Third Amended Complaint fails to specify the place at which these alleged representations were made, as required by Rule 9(b). *St. Luke's Hosp., Inc.,* 441 F.3d at 556. Moreover, although Plaintiff asserts generally in her specific fraud-based counts that "Defendants, and each of them" made representations, she completely fails to allege with the required specificity who made these apparent representations, and to whom they were made. A general allegation that numerous "Defendants" made the alleged misrepresentations is not sufficient to plead fraud with particularity as required by Rule 9(b). *See Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 550 (8th Cir. 1997) (finding pleading insufficient under Rule 9(b) where defendants were "left to guess" who was "responsible for this alleged fraud"); *Remmes v. Int'l Flavors & Fragrances, Inc.,* 389 F. Supp. 2d 1080, 1088 (N.D. Iowa 2005) ("where a plaintiff's complaint 'accuses multiple defendants of participating in the scheme to defraud, the plaintiffs must take care to identify which of them was responsible for the individual acts of fraud.'" (internal citations and quotations omitted)).

Lastly, Plaintiff fails to make any assertion relating to the apparent result of the alleged fraud. While Plaintiff asserts in her claim for fraudulent inducement that Plaintiff relied upon the representations in entering into an Employment Agreement, Plaintiff does not offer any

information to demonstrate how she was damaged as a result of entering into the employment agreement or how Defendants benefitted as a result of the alleged fraud.  For this, and the foregoing reasons, Plaintiff's fraud-based claims do not meet the Rule 9(b) pleading standard.

Plaintiff's claim for fraudulent concealment against Defendants lacks the specificity required by Rule 9(b) in yet another manner.  In attempting to assert that Defendants concealed information, Plaintiff makes several averments "upon information and belief."  (Proposed Third Amended Complaint at ¶122 (f) – (i).  Allegations based on information and belief usually do not meet Rule 9(b)'s particularity requirement.  *Drobnak v. Andersen Corp.,* 561 F.3d 778, 783 – 84 (8th Cir. 2009).  While Rule 9(b) may be satisfied if the allegations are accompanied by a statement of facts on which the belief is founded, *Id*., Plaintiff has failed to meet this exception. The proposed Third Amended Complaint contains no information whatsoever to demonstrate why Plaintiff believes, "upon information and belief" that:

- "some or all of Defendants planned to blame Bussing for unlawful and regulatory activities executed by Legent and COR (and their respective officers and directors) and would terminate her after she had taken the 'fall'"  (proposed Third Amended Complaint ¶ 122(f));

- "Defendants planned to terminate Bussing without paying her any severance." (proposed Third Amended Complaint ¶ 122(g));

-  "Defendants had no intention or plan to transition Frankel out of Legent's leadership within six (6) months or at any time) (proposed Third Amended Complaint ¶ 122(h)); and

- "Defendants had no intention or plan to appoint or allow Bussing to assume duties as President of Legent at any time."   (proposed Third Amended Complaint ¶ 122(i))

Plaintiff's conclusory statements in this regard, pled "upon information and belief" are not sufficient to meet the heightened pleading requirements of Rule 9(b) and demonstrate that Plaintiff failed to  "conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate." *Ackerman v. Northwestern Nut. Life Ins. Co.,* 172 F.3d 467, 469 (7th Cir. 1999); *St. Luke's Hosp., Inc.,* 441 F.3d at 556; *United States ex rel. Costner v. United States,* 317 F .3d 883, 888 (8th Cir. 2003).

Finally, Plaintiff's claim for negligent misrepresentation is wholly devoid of allegations sufficient to meet the Rule 9(b) pleading standard.   In attempting to assert a negligent misrepresentation claim against Defendants, Plaintiff merely states that "Defendants, and each of them, supplied false information to Bussing" and that such "false information was supplied in the course of Defendants' business profession or employment, or in a transaction in which they had a pecuniary interest."   (Proposed Third Amended Complaint at ¶129).  In this instance, Plaintiff completely fails to identify the alleged false information giving rise to the claim of negligent misrepresentation.  Moreover, she again makes no allegations as to the specific time or place of the alleged false representations and fails to specify when the acts occurred, who specifically made the alleged misrepresentations, and the result of the alleged misrepresentations.  Plaintiff simply has not pled her claim for negligent misrepresentation with sufficient particularity to allow Defendants to "respond specifically and quickly to the . . . allegations." *St. Luke's Hosp.*, 441 F.3d at 556.

26

Accordingly, it is evident that Plaintiff's proposed Third Amended Complaint fails to meet the standard of pleading required by Rule 9(b) of the Federal Rules of Civil Procedure for her claims of Fraudulent Inducement, Fraudulent Misrepresentation, Fraudulent Concealment, and Negligent Misrepresentation.   Thus, permitting Plaintiff to amend to assert these claims would be futile because Plaintiff's claims fails to meet the required pleading standard.

### F.   Plaintiff's Tortious Interference Claim Would Not Withstand a Rule 12(b)(6) Motion to Dismiss, Thus Rendering Amendment Futile.

Granting Plaintiff leave to amend her complaint to assert a claim for tortious interference would be futile as the claim could not withstand a Motion to Dismiss.

"To succeed on a claim for tortious interference with a business relationship or expectancy, a plaintiff must prove (1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted. One of the basic elements of tortious interference with a business relationship requires an intentional act which induces or causes a breach or termination of the relationship." *Recio v. Evers*, 771 N.W.2d 121, 131 (Neb. 2009).  "[I]n order to constitute actionable interference with an employment relationship, actions of a coemployee must be shown to have been committed in furtherance of some purpose other than the lawful purposes of the employer.  If such interference is established, it must also be proved to be 'unjustified' in order to be actionable." *Huff v. Swartz*, 606 N.W.2d 461, 468 (Neb. 2000).

Plaintiff asserts she had valid business relationships or expectancies with Legent and COR.   (Proposed Third Amended Complaint ¶ 136).   While Plaintiff makes the conclusory statement that "Defendants intentionally acted to interfere with said relationships or

27

expectancies, and such interference was unjustified," (Proposed Third Amended Complaint ¶ 138), Plaintiff has pled absolutely no facts in her proposed Third Amended Complaint to support this allegation.  The only factual allegations relating to the individual Defendants[7] are:

- Bussing was retained by and reported to Sugarman (Proposed Third Amended Complaint ¶ 15);

- Sugarman, Legent, and COR (and their respective officers and directors) made assurances to Plaintiff to induce her to accept employment with Legent. (Proposed Third Amended Complaint ¶ 26);

- Plaintiff received positive feedback from Sugarman, Salas, and Frankel. (Proposed Third Amended Complaint ¶ 42);

- Frankel was Legent's anti-money laundering officer when the Rule 8210 Document Request was received. (Proposed Third Amended Complaint ¶ 51);

- Salas met with Plaintiff on or about April 26, 2012 and informed her that he, other members of COR management, and COR at large supported her and her actions completely.  (Proposed Third Amended Complaint ¶ 52);

- Sugarman expressed his support of Bussing and her actions.  (Proposed Third Amended Complaint ¶ 53);

- Salas "expressed dissatisfaction with the response to the Rule 8210 Document Request," and "advocated ignoring or responding incompletely to the Rule 8210 Document Request."  (Proposed Third Amended Complaint ¶ 56);

---

[7] Plaintiff claims Defendants interfered with her business relationship with Legent/COR.  Such interference must necessarily be by a third party.  Accordingly, while not stated, this claim is apparently asserted against the individually named defendants.

- Sime "attempted to instruct Bussing to cease preparing a response to the Rule 8210 Document Request and her audit work related to anti-money laundering compliance." (Proposed Third Amended Complaint ¶ 58);

- Sime called Plaintiff to discuss Plaintiff's audit work and confer. (Proposed Third Amended Complaint ¶ 59);

- Plaintiff discussed the findings identified in her report with Legent and COR management, including Sugarman, Salas, Frankel, and Legent's new CCO. (Proposed Third Amended Complaint ¶ 64);

- Plaintiff was directed by Legent and COR management, including Sugarman, Salas, Frankel, and Legent's new CCO to stall, delay, stop digging, and stop responding to the Rule 8210 Document Request or FINRA. (Proposed Third Amended Complaint ¶ 65);

- Salas informed Plaintiff on May 4, 2012 that he, Sugarman, and COR (and its other officers and directors) had determined Plaintiff needed a vacation, which was mandatory and would begin immediately. Upon her return, Plaintiff was informed her position with Legent would be significantly changed. (Proposed Third Amended Complaint ¶ 68);

- Frankel was "dancing on [Plaintiff's] grave. (Proposed Third Amended Complaint ¶ 69);

- Salas informed Plaintiff, on or about May 12, 2012, that he was now Executive Vice President and that Plaintiff would not be managing any employees as part of her new role. Salas also informed Plaintiff she was not allowed to return to Legent's office. (Proposed Third Amended Complaint ¶ 70);

29

- Plaintiff met with Sugarman and Salas on or about May 20, 2012.  Sugarman then informed Plaintiff via e-mail she was terminated for cause.  (Proposed Third Amended Complaint ¶ 72);

- On or about May 21, 2012, Plaintiff received a letter from Salas stating her employment had been terminated for cause and, upon information and belief, the letter was directed or authorized by Frankel and Sugarman.  (Proposed Third Amended Complaint ¶ 73).

Plainly missing from the allegations against the individual defendants are any facts to support Plaintiff's bald assertion that Defendants unjustifiably interfered with her business relationship or expectancies with COR and/or Legent, or that these actions caused Plaintiff's termination.    Indeed, all acts alleged against the individual defendants were performed by these individuals in their capacity as employees and/or officers of COR.  A co-employee or officer of a company can only be liable for a tortious interference claim in the event the co-employee or officer acted "in furtherance of some purpose other than the lawful purposes of the employer." *Huff*, 606 N.W.2d at 468.  Plaintiff does not allege in any way that the individual defendants acted outside of their duties as employees of COR, or that they acted with any purpose other than the lawful purposes of COR.  In fact, Plaintiff makes several specific allegations that indicate the Defendants were acting in their capacity as employees and/or officers of COR.  *See, for example* Proposed Third Amended Complaint ¶¶ 65, 68, & 69.  Because Plaintiff's proposed Third Amended Complaint is devoid of any allegation that the individual Defendants were acting in furtherance of a purpose other than the lawful purpose of Legent or COR, and because she does not assert facts sufficient to support her conclusory statement that Defendants unjustifiably interfered with Plaintiff's business relationship with COR and/or Legent, Plaintiff's proposed

30

Third Amended Complaint does not state a viable claim for relief for tortious interference. Accordingly, permitting Plaintiff to amend her complaint to assert a claim for tortious interference would be futile.

### G. Plaintiff's Negligence Claim Would Not Withstand a Rule 12(b)(6) Motion to Dismiss, Thus Rendering Amendment Futile.

Plaintiff's Motion to Amend Complaint to assert a claim of negligence against Defendants should also be denied on the grounds of futility. Plaintiff's negligence claim alleges generally and vaguely that the Defendants failed to "communicate truthfully with Bussing and to refrain from fraudulent and negligent communications" and to "accurately report Bussing's income and other contract-related or employment-related information to the Internal Revenue Service and other appropriate authorities." (Proposed Third Amended Complaint at ¶¶ 140-143). Plaintiff has pleaded <u>no</u> facts that support this final new cause of action in her proposed Third Amended Complaint.

Specifically, there is no mention of (1) Defendants communicating untruthfully or fraudulently[8] with Plaintiff, or (2) the Internal Revenue Service, anywhere in Plaintiff's proposed pleading. In determining whether a complaint states a claim upon which relief can be granted, this Court must accept all well-pleaded factual allegations as true; however, it is not required to ignore the complete omission of facts when assessing whether Plaintiff should be allowed to amend her complaint to add a new cause of action. As set forth earlier, while a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of

---

[8] Plaintiff has attempted to assert proposed claims based upon fraud and makes the conclusory allegation that Defendants made false representations. However, as addressed in Section III(E), Plaintiff has failed to assert any facts to support the supposed falsity of the representations.

31

elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citation and punctuation omitted).

Because Plaintiff's proposed Third Amended Complaint is devoid of any facts in support of a claim of negligence against Defendants, Plaintiff's proposed Third Amended Complaint does not state a viable claim for relief. Accordingly, permitting Plaintiff to amend her complaint to assert a claim for negligence would be futile.

**IV.**     **Plaintiff's Motion to Amend Should be Denied Because Plaintiff's Federal Claim Even as Amended Fails To State a Claim, and No Other Basis for Federal Jurisdiction Exists, Thus Rendering Amendment Futile.**

Plaintiff alleges this Court has original jurisdiction for her Dodd-Frank Act whistleblower claim pursuant to 28 U.S.C. § 1331, jurisdiction for her state law claims pursuant to diversity jurisdiction under 28 U.S.C. § 1332 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Plaintiff's proposed Third Amended Complaint states that Plaintiff "at the time of the filing of the Complaint herein, resided in Omaha, but was domiciled in and a citizen of Washington." (Proposed Third Amended Complaint ¶ 1).

"'[T]he jurisdiction of the court depends upon the state of things at the time of the action brought.'" *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 569 (2004) quoting *Mollan v. Torrance,* 9 Wheat. 537, 539, 6 L.Ed. 154 (1824). As will be explained below, Plaintiff failed to plead the requirements for diversity jurisdiction at the time the initial complaint was brought, and the Court should decline to exercise its supplemental jurisdiction in this case because the only federal cause of action fails to state a claim and would be subject to a Motion to Dismiss. Thus, amendment of Plaintiff's complaint to assert seven new state-law causes of action would be futile because diversity jurisdiction does not exist.

Jurisdiction pursuant to diversity of citizenship is proper only when "the citizenship of each plaintiff is different from the citizenship of each defendant." *Stewart v. Oursland*,

No. 4:12CV3070, 2012 WL 2930057, at *3 (D. Neb. July 18, 2012) (citing to *Ryan v. Schneider Nat'l Carriers, Inc.*, 263 F.3d 816, 819 (8th Cir. 2001)).  "[D]iversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff."  *Owen Equip. & Errection Co. v. Kroger*, 437 U.S. 365, 373 (1978).  "Citizenship is determined by a person's physical presence in a state along with his intent to remain there indefinitely." *Altimore v. Mount Mercy Coll.*, 420 F.3d 763, 768 (8th Cir. 2005) (where plaintiff resided, worked and listed a permanent address in Pennsylvania, he was in fact a citizen of Pennsylvania for purposes of diversity jurisdiction, despite his contention that he was still domiciled in his former state of residence).  Where "the very face of [a plaintiff's] complaint" lists his or her address in the same state as the residence of a defendant, "the court . . . lacks diversity of citizenship subject matter jurisdiction over plaintiff's action, as both plaintiff and defendant are residents of the same state." *Dixon v. Nisley*, 840 F. Supp. 49, 51 (E.D. Va. 1994).

In this case, Plaintiff admitted in her initial pleadings that COR/Legent has "its main office and business operations at 9300 Underwood Ave., Suite 400, Omaha, NE 68114."  (Doc. 19, ¶ 2).  Because COR/Legent's principal place of business is in Nebraska, COR/Legent is considered a citizen of Nebraska.[9]  Plaintiff has also specifically pled in her initial pleadings she is "residing in Omaha, Douglas County, Nebraska."  (*Id.*, ¶ 1).  Although Plaintiff also asserted she is "domiciled in Washington," such a statement is contrary to the facts surrounding Plaintiff's citizenship.  (*Id.*).  Plaintiff herself admitted in her initial pleadings that after she "accepted employment with Legent," headquartered in Omaha, she "relocated from Washington to Nebraska."  (*Id.*, ¶ 88).  Further, the signature block attached to the pleadings and motions filed by Plaintiff *pro se* lists an Omaha, Nebraska mailing address.  (*See* Docs. 1-49).  Therefore,

---

[9] 28 U.S.C. § 1332(c)(1) provides "a corporation shall be deemed to be a citizen . . . of the State . . . where it has its principal place of business . . . ."

33

because Plaintiff and Defendant were both citizens of Nebraska at the time this litigation was commenced, the Court lacks diversity jurisdiction over this matter once the federal claim is dismissed.  An allegation in the proposed Third Amended Complaint that Plaintiff was domiciled in and a citizen of Washington at the time Plaintiff filed her Complaint does not cure the practical reality that Plaintiff was, for the purposes of diversity jurisdiction, a citizen of Nebraska at the time her Complaint was filed by her own admissions in her pleading.

Because Plaintiff has failed to cure the defect in pleading for her only federal court claim under the Dodd-Frank Act's whistleblower protection provision in her proposed Third Amended Complaint, and her pleadings cannot support a claim for diversity, granting leave to amend would be futile as the Court does not have jurisdiction over the remainder of the claims asserted in the proposed Third Amended Complaint.

### V.    Plaintiff's Motion to Amend Complaint Should be Denied on the Grounds of Undue Delay and Bad Faith.

Defendants further submit that Plaintiff's Motion to Amend should be denied due to undue delay and bad faith.  "A denial of leave to amend may be justified by undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party." *Amrine v. Brooks,* 522 F.3d at 833 (internal quotation marks and citation omitted).  "[L]eave to amend has been denied when the moving party knew about the facts on which the proposed amendment was based but omitted the necessary allegations from the original pleading."  Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1488 (3d ed.).

In this instance, Plaintiff has attempted to assert certain new facts in her proposed Third Amended Complaint, including those which form the basis of her fraud-based claims and which pertain to representations allegedly made by Defendants.  Plaintiff further seeks to add two new defendants to her proposed Third Amended Complaint.  Defendants submit that to add this

34

additional information and two new defendants almost a year after Plaintiff initially filed her complaint is evidence that Plaintiff is acting in bad faith and attempting to delay the resolution of this litigation given that Plaintiff was aware of this information at the time she filed her initial complaint.   Plaintiff's new "factual" allegations took place during her employment with COR.   Accordingly, these were known to Plaintiff at the time she filed her initial pleading.   Moreover, the identity of the two new proposed defendants, Steven Sugarman and Jeffrey Sime, and the alleged conduct of these individuals, was known to Plaintiff at the time she filed her initial pleading as the events pled took place during her employment with COR.  Plaintiff had adequate opportunity to include this information in her initial pleading or attempt to add it to the two amended complaints she sought leave to file while acting pro se.  Plaintiff failed to do so, and Defendants submit that adding additional facts and defendants at this stage is an act in bad faith and will serve only to delay this litigation.  For these reasons, Plaintiff's Motion to Amend should be denied.

## CONCLUSION

In the interests of avoiding potentially unnecessary new and additional briefing on the legal flaws in Plaintiff's amended and new counts, and in order to avoid prejudicial delay, Defendants respectfully request that the Court deny Plaintiff's Motion to Amend Complaint as futile because the proposed amendments do not correct the deficiencies in the prior Amend Complaint filed by Plaintiff and do not sufficiently state a claim as to the new claims asserted.

4833-8583-1700.3

Respectfully submitted this 24th day of June, 2013

> COR CLEARING, LLC, and
> COR SECURITIES HOLDINGS, INC., and
> CARLOS P. SALAS, and CHRISTOPHER
> L. FRANKEL, in their Individual
> Capacities, Defendants.


> s/ Gillian G. O'Hara
> Gillian G. O'Hara #22414
> Kutak Rock LLP
> The Omaha Building
> 1650 Farnam Street
> Omaha, NE  68102-2186
> (402) 346-6000
> gillian.ohara@kutakrock.com


## CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

J.L. Spray, Esq.
Mattson, Ricketts, Davies, Stewart & Calkins
134 South 13th Street, Suite 1200
Lincoln, NE 68508-1901
(402) 475-8433
jls@mattsonricketts.com

David M. Gaba, Esq.
Compass Law Group PS
2600 Second Avenue, Suite 2302
Seattle, WA 98121
(206) 251-5488
davegaba@compasslegal.com

> s/ Gillian G. O'Hara