IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JULIE A. BUSSING, | |
| Plaintiff, | **8:12CV238** |
| vs. | |
| COR CLEARING, LLC,  COR SECURITIES HOLDINGS, Inc.; CARLOS P. SALAS, in their Individual Capacities; and CHRISTOPHER L. FRANKEL, in their Individual Capacities; | **FINDINGS AND RECOMMENDATION** |
| Defendants. | |

This matter is before the court on Defendants' motion to dismiss, (Filing No. 26), and Plaintiff's motion to file a third amended complaint, (Filing No. 63).[1]  For the reasons discussed below, the motions should be granted in part and denied in part.

BACKGROUND[2]

Plaintiff Julie A. Bussing has worked in the securities industry since 1989.  She was a licensed Certified Public Accountant, holds a Masters of Business Administration and she has been qualified to hold several Financial Industry Regulatory Authority ("FINRA") licenses.[3]

---

[1] Due to the substantial overlap between the pending motions, Senior District Judge Warren K. Urbom referred the motion to dismiss to the undersigned to evaluate in conjunction with the motion to amend, and to issue Findings and a Recommendation on both motions.  To the extent the court has found portions of the proposed third amended complaint futile, based on the standard that such claims would not survive a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), I have recommended the dismissal of those claims.

[2] Defendants are challenging the Motion to Amend claiming the amendment would be futile.  For the purposes of the this motion only, the court accepts the plaintiff's factual allegations as true.

[3] The National Association of Securities Dealers, Inc. ("NASD") changed its corporate name to the Financial Industry Regulatory Authority, Inc. ("FINRA") on July 26, 2007. See Securities Exchange Act Rel. No. 56146, 2007 WL 5185331 (July 26, 2007); 72 Fed.Reg.

Bussing began working for Defendant COR Securities Holdings, Inc., ("COR"), a California private investment management company, as an independent contractor on September 19, 2011. Part of her duties involved assisting with due diligence investigations for COR's acquisition of Legent Clearing, LLC ("Legent"). Legent provides clearing services to brokerage clients, is headquartered in Omaha, Nebraska, and is now COR's wholly owned subsidiary.

Defendant Steven Sugarman – the CEO of COR – recruited Bussing for a fulltime employment position as Legent's Executive Vice President. Bussing expressed concerns based on Legent's "previous regulatory issues and potential current and continuing unethical and illegal practices and compliance violations," (Filing No. 63-1, ¶ 25 at CM/ECF p. 7), and assisted with creating and implementing a "Change of Control Plan" to address Legent's "troubling" regulatory history. Sugarman, Legent, and COR assured Bussing that she was authorized to implement the Change of Control Plan and that she would be offered long-term employment with Legent.

On January 1, 2012, Bussing entered into an oral employment agreement with Legent, the terms of which provided Bussing with a three-year term of employment and allowed her to report directly to Sugarman and the COR Board of Directors and not to Christopher Frankel, Legent's acting CEO. The terms of Bussing's employment were reduced to writing in an employment agreement (the "Employment Agreement"). (Filing No. 63-1). The Employment Agreement was meant to memorialize the terms of the oral employment agreement, but actually differed in some respects.

Bussing began implementing the Change of Control Plan at the outset of her employment. On or about January 5, 2012, Legent received a preliminary request for documents and information from Financial Industry Regulatory Authority ("FINRA") to facilitate its 2012 examination of Legent. On January 23, 2012, FINRA sent a team of nine

---

42190–01, 2007 WL 2186071 (Aug. 1, 2007). Cases cited herein that refer to the NASD rather than FINRA have been interpreted as applicable to FINRA.

examiners to Legent's office in Omaha.  Pursuant to FINRA Rule 8210, FINRA also sent extensive document and information requests to Legent.  Bussing began preparing responses to the Rule 8210 document request.  In the course of her investigation, Bussing identified several potential or existing violations of FINRA rules, federal securities regulations, violations of the Bank Security Act, and anti-money laundering provisions.

On Thursday, April 26, 2012, Bussing met with Salas, a director of COR.  Salas told Bussing that she had the support of COR management.  (Filing No. 63-1, ¶53 at CM/ECF p. 52). On April 27, 2012, in response to her investigation findings, Bussing directed Legent staff to cease processing penny stock certificates.   Bussing also ordered staff to perform several transactional audit and account reviews of third-party foreign wires occurring in 2011 and 2012. On or about that same day, Salas expressed his dissatisfaction with Bussing's responses to the Form 8210 requests and her decision to suspend the processing of penny stock certificates. Likewise, defendant Jefferey Sime, Legent's CFO, COO, and an officer, confronted Bussing. Sime attempted to instruct Bussing to cease her work on the Form 8210 responses and the internal audits.

On April 29, 2012, Bussing issued a report to COR and Legent's CCO detailing several violations of the anti-money laundering provisions and deficits in Legent's internal record-keeping.  Bussing alleges she was instructed by Legent and COR management and other defendants to delay and stop responding to FINRA's request for documents and other information.   FINRA examiners were onsite at Legent's Omaha office from April 30, 2012 to May 3, 2012.

On May 4, 2012, Salas allegedly notified Bussing that Salas, Sugarman, and COR had decided Bussing "needed a vacation," ordered Bussing to begin her leave immediately, and informed Bussing that when she returned from vacation, her position would be changed and Salas would become the CEO of Legent.  On May 20, 2012, Bussing received a letter stating she was terminated for cause.  She later received a copy of the Form U-5 completed by Legent and

3

filed with FINRA which stated Bussing was terminated and had not performed her position "consistent with company expectations."

## PROCEDURAL HISTORY

Bussing filed her initial pro se complaint on July 9, 2012.  She asserted several claims including: (1) wrongful termination under the Nebraska Fair Employment Practice Act; (2) a violation of section 78u-6(h)(1)(A)(ii) of the Dodd-Frank Act ("DFA"); (3) a common law action for wrongful termination; (4) breach of contract actions for wrongful termination and constructive discharge; (5) defamation under Neb. Rev. Stat. § 25-839, and (6) a violation of the Nebraska Wage Payment & Collection Act.  (Filing No. 1).  The original named defendants were Legent, COR, Salas, and Frankel. (Filing No. 1).  On August 10, 2012, Bussing was afforded additional time to file an amended complaint.  (Filing No. 18).

Bussing filed her amended complaint on August 14, 2012.  (Filing No. 19).  The amended complaint refined her DFA claim by eliminating a specific reference to 78u-6(h)(1)(A)(ii), tailored other claims previously raised, and added claims based on Neb. Rev. Stat. § 20-148 and on "detrimental reliance."  (Filing No. 19 at CM/ECF p. 17).

The named defendants filed a motion to dismiss Bussing's claims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  (Filing No. 26).  Bussing filed an opposition to the Motion to Dismiss on September 11, 2012, (Filing No. 28).  Bussing later filed a "Notice of Name Change" to change the name of defendant Legent Clearing, LLC to COR Clearing, LLC in the case caption.  She also moved to file a second amended complaint to reflect the name change, (Filing No. 33), and filed the second amended complaint of record.  (Filing No. 34).  Her motion to file the second amended complaint was retroactively granted.  (Filing No. 41).  The parties briefed the motion to dismiss extensively.

4

On April 5, 2013, counsel entered an appearance on behalf of Bussing and sought leave to file additional briefing on the matter.  Leave was granted.  Bussing filed an additional brief in opposition to Defendants' motion to dismiss and moved for leave to file a third amended complaint.  The proposed third amended complaint seeks to add two new defendants – Sugarman and Sime – and adds seven new theories of recovery: (1) Breach of the Covenant of Good Faith and Fair Dealing; (2) Fraudulent Inducement; (3) Fraudulent Misrepresentation; (4) Fraudulent Concealment; (5) Negligent Misrepresentation; (6) Tortious Interference; and (7) Negligence. (Filing No. 63-1, ¶¶ 97-101; 107-143).  The proposed third amended complaint also reasserts the following claims:  Retaliation in Violation of 15 U.S.C. § 78u-6; Violation of Neb. Rev. Stat. §§ 20-148 and 48-1114(3); Wrongful Termination in Violation of Public Policy; Breach of Contract; and Defamation.

## ANALYSIS

The defendants oppose the plaintiff's motion to amend on procedural grounds, and they move to dismiss the current complaint and oppose the motion to amend based on lack of subject matter jurisdiction and for failure to state a claim.

## I.  Procedural Errors.

### A.  Violation of Local Rules.

Defendants have objected to Plaintiff's motion to file a third amended complaint, arguing Plaintiff violated the local rules.  Specifically, Bussing did not file an initial brief with her motion to amend, and as a result, Defendants argue she cannot file a reply brief without leave of the court.  Defendants further assert Bussing's motion is improper because she did not specifically state the proposed amendments or state whether the motion was unopposed, as contemplated by NECivR 15.1(a).  In response, Bussing points to an instance where the Defendants allegedly failed to follow the local rules by responding in an untimely fashion.

The local rules are intended to facilitate the timely and orderly progression of a case. When appropriate, the court is permitted to "deviate from this court's rules or procedures" in the "interest of justice," NEGenR 1.1(c). This case has already seen its fair share of procedural oddities. The court does not believe the interests of justice will be served by denying Plaintiff's motion to amend based on the real or perceived violations of the local rules raised by Defendants.

### B. Undue Delay and Bad Faith.

Defendants argue the motion to amend should be denied due to undue delay and bad faith. The court finds evidence of neither.

The defendants have provided no facts supporting their claim of bad faith. As to the claim of delay, this case was originally filed *pro se,* and despite the length of time it has been pending, the actual proceedings are not far along. The motion to amend was filed two months after the initial appearance by Bussing's attorney and after the plaintiff was given leave to provide additional briefing on the pending Motion to Dismiss. The Motion to Dismiss filed on August 30, 2012 was still pending in June of 2013, when Plaintiff's motion for leave to file an amended complaint was filed. Considered in the context of the entire case, the plaintiff has not subjected the defendants to undue delay in pursuing this lawsuit.

## II. Subject Matter Jurisdiction.

### A. Federal Question.

Plaintiff  cites 15 U.S.C. § 78u-6(h)(1)(A) – the whistleblower protection of the Dodd-Frank Act ("DFA") as a basis for recovery against the defendants. Bussing argues the DFA whistleblower claim vests this court with federal question subject matter jurisdiction, and

permits the court to exercise supplemental jurisdiction over Bussing's state law claims. Defendants argue the DFA claim – Bussing's only claim arising under federal law – is legally insufficient. Defendants argue this court therefore lacks subject matter jurisdiction, rendering the motion to amend futile and the entire law suit subject to dismissal.

The DFA was enacted in 2010 "[t]o promote the financial stability of the United States by improving accountability and transparency in the financial system, to end "too big to fail", to protect the American taxpayer by ending bailouts, to protect consumers from abusive financial services practices, and for other purposes." PL 111-203, 2010 HR 4173. The DFA statutory scheme includes a provision affording both an incentive and relief for corporate whistleblowers. That is, a whistleblower may receive a monetary reward for providing information to the Securities and Exchange Commission ("SEC"), and can assert a private right of action against employers who retaliate against them for engaging in activity protected under the DFA. 15 U.S.C. § 78u-6(h)(1)(A).

The core question before this court is whether Bussing acted as a "whistleblower," as that term is defined under the DFA, when investigating and communicating her concerns about Legent to FINRA and to COR and its corporate officers. If the conduct she alleges is DFA "whistleblowing," this court has federal question jurisdiction; if it is not, the plaintiff has no claim arising under federal law.

Defendants claim Bussing was not a whistleblower because she reported nothing to the SEC itself. Defendants claim that the DFA's whistleblower definition includes a SEC reporting requirement. The DFA defines retaliatory conduct against a whistleblower as follows:

> No employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower—

> **(i)** in providing information to the Commission in accordance with this section;
>
> **(ii)** in initiating, testifying in, or assisting in any investigation or judicial or administrative action of the Commission based upon or related to such information; or
>
> **(iii)** in making disclosures that are required or protected under the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201 et seq.), this chapter, including section 78j-1(m) of this title, section 1513(e) of Title 18, and any other law, rule, or regulation subject to the jurisdiction of the Commission.

15 U.S.C.§ 78u-6(h)(1)(A).  For the purposes of the DFA, a "whistleblower" is defined as:

> [A]ny individual who provides, or 2 or more individuals acting jointly who provide, information relating to a violation of the securities laws *to the Commission*, in a manner established, by rule or regulation, by the Commission." 15 U.S.C.A. § 78u-6.

15 U.S.C. §78u-6(a)(6) (emphasis added).

The SEC regulation which defines a whistleblower for the purposes of the DFA's anti-retaliation provisions omits any requirement of reporting to the SEC itself.  17 C.F.R. § 240.21F–2(b) states:

> (b) Prohibition against retaliation:
>
> (1) For purposes of the anti-retaliation protections afforded by Section 21F(h)(1) of the Exchange Act (15 U.S.C. 78u–6(h)(1)), you are a whistleblower if:
>
> > (i) You possess a reasonable belief that the information you are providing relates to a possible securities law violation (or, where applicable, to a possible violation of the provisions set forth in 18 U.S.C. 1514A(a)) that has occurred, is ongoing, or is about to occur, and;
> >
> > (ii) You provide that information in a manner described in Section 21F(h)(1)(A) of the Exchange Act (15 U.S.C. 78u–6(h)(1)(A)).

8

> (iii)  The anti-retaliation protections apply whether or not you satisfy the requirements, procedures and conditions to qualify for an award.

17 C.F.R. § 240.21F–2.

But under another SEC regulation, "[t]o be considered a whistleblower," the report must not only be submitted to the SEC, but submitted in the manner described as follows:

> (a)  To be considered a whistleblower under Section 21F of the Exchange Act (15 U.S.C. 78u–6(h)), you must submit your information about a possible securities law violation by either of these methods:
>
> > (1)  Online, through the Commission's Web site located at http://www.sec.gov; or
> >
> > (2)  By mailing or faxing a Form TCR (Tip, Complaint or Referral) (referenced in § 249.1800 of this chapter) to the SEC Office of the Whistleblower, 100 F Street NE., Washington, DC 20549–5631, Fax (703) 813–9322.

17 C.F.R. § 240.21F–9.

The plaintiff's complaint does not allege Bussing reported any "information relating to a violation of the securities laws to the Commission," (15 U.S.C. §78u-6(a)(6)), by any of the means outlined in 17 C.F.R. § 240.21F–9. Rather, she claims her reports to FINRA entitle her to whistleblower protection under the DFA. Specifically, Plaintiff's complaint alleges she engaged in activity protected under the retaliation provisions of the DFA through "compliance with the [FINRA] Rule 8210 Document Request, cooperation during the FINRA examination and investigation, and preparation of her report detailing potential Bank Security Act and anti-money laundering violations." (Filing No. 63-1, ¶ 76 at CM/ECF p. 16). Bussing states these actions were "required or protected by law, rules or regulations within the SEC's jurisdiction, including but not limited to, SEC and FINRA rules designated for registered broker-dealers to comply with the Bank Secrecy Act and USA Patriot Act," (Filing No. 63-1, ¶ 77 at CM/ECF p. 16); and as such, her cooperation with the FINRA investigation and her internal report regarding

the alleged Bank Security Act and anti-money laundering violations affords her whistleblower protection under Section 78u-6(h)(1)(A)(iii) of the DFA.

Although, the definition of "whistleblower" for the purposes of the DFA expressly requires communication "to the Commission," Plaintiff nonetheless asserts she qualifies for retaliation protection because Section 78u-6(h)(1)(A)(iii) protects certain activity by individuals who do not report alleged misconduct to the SEC. She argues that FINRA is a self-regulatory organization subject to SEC registration and oversight, (15 U.S.C.A. § 78s), and therefore her disclosures to FINRA were made pursuant to a "law, rule, or regulation subject to the jurisdiction of the Commission," (78u-6(h)(1)(A)(iii)), and is protected conduct under the DFA.

The plaintiff cites Egan v. Tradingscreen, Inc., No. civ. 8202, 2011 WL 1672066, at *5 (S.D.N.Y. May 4, 2011) in support of her position. In Egan, an employee was fired by the company's CEO after reporting the CEO's misconduct to the company's Board of Directors and a law firm hired to conduct an independent internal investigation. The plaintiff in Egan brought a retaliation action under section 78u-6(h)(1)(A)(i)-(iii) of the DFA. Upon review of section 78u-6(h)(1)(A)(i)-(iii), Egan noted subsection (i) and (ii) explicitly prohibited retaliation based on statements an employee made to the SEC, but subsection (iii) did not state that the protected reporting must be made to the SEC. Egan, 2011 WL 1672006 at *4. That is, while both subsections (i) and (ii) mentioned reporting to the "Commission," subsection (iii) did not explicitly limit the protected conduct to disclosures made to the Commission. Relying on this distinction, Egan crafted a narrow exception to the whistleblower definition in 15 U.S.C. §78u-6(a)(6), concluding that if the claimed whistleblower's disclosures fall within one of the categories 15 U.S.C § 78u-6(h)(1)(A)(iii), the report need not be made to the SEC to warrant whistleblower protection. Egan explained that "a literal reading of the definition of the term 'whistleblower' in 15 U.S.C. §78u-6(a)(6), requiring reporting to the SEC, would effectively invalidate §78u-6(h)(1)(A)(iii)'s protection of whistleblower disclosures." Id. Egan held that irrespective of whether the disclosures were made to the SEC itself, §78u-6(h)(1)(A)(iii) protected individuals who made disclosures (1) under the Sarbanes-Oxley Act, (2) under the

Securities Exchange Act, (3) pursuant to 18 U.S.C. § 1513(e), and (4) pursuant to other laws and regulations subject to the SEC's jurisdiction. Id.   See also Rosenblum v. Thomson Reuters (Markets) LLC, case no. 13cv2219, 2013 WL 5780775, 5 (S.D.N.Y. October 25, 2013); Ellington v. Giacoumakis, case no. 13cv11791, 2013 WL 5631046, 3 (D. Mass. October 16, 2013); Murray v. UBS Securities, LLC, case no. 12cv5914, 2013 WL 2190084, 1 (S.D.N.Y.) (S.D.N.Y. May 21, 2013); Nollner v. Southern Baptist Convention, Inc., 852 F. Supp. 2d 986 (M.D. Tenn. 2012); Genberg v. Porter, 935 F. Supp. 2d 1094 (D. Col. 2013); Kramer v. Trans-Lux Corp., case no. 11cv1424, 2012 WL 4444820 at *4 (D. Conn. September 25, 2012).

The Fifth Circuit rejected the reasoning and holding of Egan and its progeny.  Asadi v. G.E. Energy, LLC, 720 F.3d 620 (5th Cir. 2013).[4]  In Asadi, the plaintiff accepted a position as GE Energy's Iraq Country Executive and relocated to Amman, Jordan.  After Asadi made several internal reports expressing his opinion that GE Energy was violating the Foreign Corrupt Practices Act, he received an unfavorable job performance evaluation and was eventually fired. The defendant moved to dismiss the case, arguing Asadi did not qualify as a whistleblower.[5] The plaintiff argued that although he did not report directly to the SEC, he was eligible for protection because his reporting was protected under 78u-6(h)(1)(A)(iii) which does not require disclosure to the SEC.

Asadi analyzed the "perceived conflict" between the DFA definition of a "whistleblower" as one who reports to the SEC and section 78u-6(h)(1)(A)(iii).  Asadi, 720 F.3d at 625. Acknowledging the lower court decisions following Egan, Asadi held:

Under Dodd-Frank's plain language there is only one category of whistleblowers: individuals who provide information relating to a securities law violation to the

---

[4] Asadi v. G.E. Energy, LLC, 720 F.3d 620 (5th Cir. 2013) was entered on July 17, 2013, after the briefing on the pending motions was complete.  Rather than request supplemental briefing on this evolving area of law, the undersigned has filed this Findings and Recommendation, recognizing that the parties can still address all the recent cases, including the Fifth Circuit's decision in Asadi, before a final ruling on the pending motions is entered.

[5] The plaintiff also moved for dismissal, arguing that the whistleblower protection provision of the FDA did not apply to the Foreign Corrupt Practices Act.

11

> SEC.   The three categories listed in subparagraph § 78u-6(h)(1)(A) represent protected activity in a whistleblower-protection claim.   They do not, however, define which individuals qualify as whistleblowers.

Asadi, 720 F.3d at 625.   The court found the definition of "whistleblower" in 15 U.S.C. §78u-6(a)(6) was unambiguous because it clearly requires a report to the SEC by the individual seeking protection. The court further held that section 78u-6(h)(1)(A)(iii) – listing the protected behaviors – was not in conflict with the definition of a "whistleblower."   Id. at 625-631.   That is, the court held that only individuals who met the definition of "whistleblower" – i.e. individuals that have reported to the SEC – are eligible for protection.   The court provided an example of how the definition of "whistleblower" would work in conjunction with 78u-6(h)(1)(A)(iii) without creating conflict or rendering the 78u-6(h)(1)(A)(iii) superfluous:

> Assume a mid-level manager discovers a securities law violation. On the day he makes this discovery, he immediately reports this securities law violation (1) to his company's chief executive officer ("CEO") and (2) to the SEC.  Unfortunately for the mid-level manager, the CEO, who is not yet aware of the disclosure to the SEC, immediately fires the mid-level manager.  The mid-level manager, clearly a "whistleblower" as defined in Dodd–Frank because he provided information to the SEC relating to a securities law violation, would be unable to prove that he was retaliated against because of the report to the SEC.  Accordingly, the first and second category of protected activity would not shield this whistleblower from retaliation. The third category of protected activity, however, protects the mid-level manager. In this scenario, the internal disclosure to the  CEO, a person with supervisory authority over the mid-level manager, is protected under 18 U.S.C. § 1514A, the anti-retaliation provision enacted as part of the Sarbanes–Oxley Act of 2002 ("the SOX anti-retaliation provision"). Accordingly, even though the CEO was not aware of the report to the SEC at the time he terminated the mid-level manager, the mid-level manager can state a claim under the Dodd–Frank whistleblower-protection provision because he was a "whistleblower" and suffered retaliation based on his disclosure to the CEO, which was protected under SOX.

Asadi, 720 F.3d at 627-28.

 Asadi acknowledged that the SEC regulatory definition of a whistleblower does not include an SEC reporting requirement, (See 17 C.F.R. § 240.21F–2), but it rejected this broader

12

regulatory definition.  "Simply put, this regulation, instead of using the statute's definition of 'whistleblower,' redefines 'whistleblower' more broadly by providing that an individual qualifies as a whistleblower even though he never reports any information to the SEC, so long as he has undertaken the protected activity listed in 15 U.S.C. § 78u–6(h)(1)(A)."  Asadi, 720 F.3d at 629.  Asadi explained, "Congress defined 'whistleblower' . . . and did so unambiguously. . . . The statute therefore clearly expresses Congress's intention to require individuals to report information to the SEC to qualify as a whistleblower under Dodd-Frank." Id. at 630.  "Because Congress has directly addressed the precise question at issue, we must reject the SEC's expansive interpretation of the term "whistleblower" for purposes of the whistleblower-protection provision." Asadi, 720 F.3d at 630.[6]  See also, Wagner v. Bank of America Corp., case no. 12cv381, 2013 WL 3786643, at *6 (D. Colo. July 19, 2013)("wholeheartedly" agreeing with the Fifth Circuit opinion in Asadi finding the statutory text of section 78u-6 to be "plain and unambiguous").  But see Rosenblum v. Thomson Reuters (Markets) LLC, case no. 12cv2219, 2013 WL 5780775 (S.D.N.Y. Oct. 25, 2013)(rejecting Asadi, and finding the provisions of the DFA to be ambiguous and deferring to the SEC interpretation); Ellington v. Giacoumakis,case no. 13cv11791, 2013 WL 5631046 (D. Mass. October 16, 2013)(disagreeing with Asadi and allowing a plaintiff, who filed a complaint with a compliance officer rather than the SEC, to bring a suit based on the whistleblower provision in the DFA).

Bussing's argument presents an issue of statutory construction. Applying settled principles as outlined by the Supreme court and the Eighth Circuit, if a statute's language is plain and unambiguous, the court "must apply the statute according to its terms." U.S. v. Bruguier,--- F.3d. --- 2013 WL 5911238, 13 (8th Cir. Nov. 5, 2013) (quoting Carcieri v. Salazar, 555 U.S. 379, 387 (2009)).

---

[6] Asadi also noted that the inconsistency within the SEC's regulatory scheme.  That is, 17 C.F.R. § 240.21F–2 omits the SEC reporting requirement of 15 U.S.C. § 78u–6(h)(1)(A) when defining a whistleblower, while simultaneously stating that reports "must" be sent to the SEC to "be considered a whistleblower."  17 C.F.R. § 240.21F–9.  As stated by Asadi, the inherent conflict within the SEC own regulations undermines any claim that the court should rely on those regulations when determining Congress' intent.  Asadi, 720 F.3d at 630.

As in all such cases, we begin by analyzing the statutory language." Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, ——, 130 S.Ct. 2149, 2156, 176 L.Ed.2d 998 (2010). "If the statute is clear and unambiguous 'that is the end of the matter, for the court ... must give effect to the unambiguously expressed intent of Congress.' " Bd. of Governors of Fed. Reserve Sys. v. Dimension Fin. Corp., 474 U.S. 361, 368, 106 S.Ct. 681, 88 L.Ed.2d 691 (1986) (quoting Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).

Bruguier, 2013 WL 5911238, at *9.  If "the intent of Congress is clear as to the precise question at issue," (Baptist Health v. Thompson, 458 F.3d 768, 733 (8th Cir. 2006)), no further inquiry is necessary.  Only if the statute in question is "silent or ambiguous with respect to the specific issue" will the court look to agency interpretation, such as the SEC's regulations.  Id.

Bussing asks the court to rely on the district court decisions finding ambiguity in the relevant portions of the DFA.  But after noting that the legislative history of the DFA "indicates that Congress intended to encourage whistleblowers reporting . . . violations to report to the SEC," (Egan, 2011 WL 1672066 at *5), Egan read in a narrow exception to the "contradictory" provisions" of the DFA without discussing whether the sections were actually contradictory.  Id. at *6.  Egan stated section 78u-6(h)(1)(A)(iii) did not require disclosure directly to the SEC, but did not expand on its reasoning for the statement.  Id. at *4; see also Nollner, 852 F. Supp. 2d at 993-94 (stating 78u-6(h)(1)(A)(iii) does not require direct interaction with SEC, citing Egan); Kramer v. Trans-Lux Corp., 2012 WL 4444820 at *4 (finding a requiring of direct communication with the SEC in the manner described in the DFA was inconsistent with the goal of the DFA).  The court is not persuaded by these cases.

Interpreting 78u-6(h)(1)(A)iii as providing a narrow exception to the SEC reporting requirement would set aside the clear definition of "whistleblower" in 15 U.S.C. §78u-6(a)(6).  The court is not willing to alter Congress' statutory definition.  While the definition set forth in 15 U.S.C. §78u-6(a)(6)) may limit the whistleblower protection afforded under the Act, "[r]esolution of the pros and cons of whether a statute should sweep broadly or narrowly is for Congress," not the courts.  U.S. v. Rodgers, 466 U.S. 475, 484 (1984).  "Even if the proper

14

interpretation of a statute upholds a 'very bad policy,' it 'is not within our province to second-guess' the 'wisdom of Congress' action' by picking and choosing our preferred interpretation from among a range of potentially plausible, but likely inaccurate, interpretations of a statute." Harbison v. Bell, 556 U.S. 180, 198 (2009) (Thomas, J., concurring in the judgment) (quoting Eldred v. Ashcroft, 537 U.S. 186, 222, 123 S.Ct. 769, 154 L.Ed.2d 683 (2003), and cited in Hartman v. Smith, 734 F.3d 752 (8th Cir. 2013)).

Although Asadi involved an internal report and not a report to FINRA, it's reasoning remains persuasive.  The definition of "whistleblower" does not include reporting to FINRA or any other self-regulatory organization.  FINRA and the SEC are not the same organization, (Jones v. S.E.C., 115 F.3d 1173 (4th Cir. 1997)).  Moreover, to the extent that this court can and should look at statutory intent in resolving the current issue, limiting whistleblower protection to those who report to the SEC may be entirely consistent with the purpose of the DFA as a whole.

As previously stated, a stated purpose of the DFA was to improve "accountability and transparency in the financial system" through enhanced SEC oversight.  PL 111-203, 2010 HR 4173.  A report of improper financial actions and inactions made to a corporation's officers and board of directors may never advance beyond that corporation and does little to enhance the transparency of the corporation's conduct.  And even FINRA is not always a timely reporting conduit to the SEC.  FINRA is not obligated to notify the SEC of a complaint against a FINRA member unless and until FINRA issues a final decision that sanctions, prohibits, or limits that member's conduct or access to services.  15 U.S.C.A. § 78s (d).  If the SEC receives notice of an adverse decision against a FINRA member, the SEC may be called on to review the ruling, but even if it does so, it is not thereby prohibited from pursuing a separate and independent action against the violating member.

> While the SEC has important roles in both the [FINRA] proceedings and its own administrative enforcement proceedings, its roles in the two proceedings vary, as does the nature of each proceeding.  [FINRA's] proceedings are intended to provide front-line, less formal enforcement of rules governing day-to-day operations of over-the-counter securities markets.  On the other hand, the SEC administrative proceedings cover all markets and organizations and are designed

to prevent and to punish more serious securities laws violations which, as the SEC determines, must be redressed in the public interest.

Jones v. S.E.C., 115 F.3d 1173 (4th Cir. 1997).

Reports to FINRA are not the functional equivalent of reporting to the SEC. By extending whistleblower protection to only those who report directly to the SEC, the DFA promotes the receipt of all complaints by the entity empowered to impose a full panoply of consequences for unlawful conduct, to include not only discipline, but also civil damages and penalties, injunctive relief, and criminal charges.

The anti-retaliation provisions of the DFA are clear and unambiguous. They define a whistleblower, (15 U.S.C. §78u-6(a)(6)), and the conduct which affords protection from whistleblower retaliation. 15 U.S.C.§ 78u-6(h)(1)(A). Asadi's persuasive and detailed analysis discusses how the two sections can be read together without creating ambiguity or conflict. As applied to Bussing, had she reported the defendants' alleged wrongful conduct directly to the SEC and to FINRA and internally within the company, her proposed amended complaint would state a claim for relief under the DFA's anti-retaliation provisions—whether the defendants were aware of her SEC disclosure or not.  But without a report to the SEC, she is not a whistleblower, and cannot assert a DFA whistleblower retaliation claim.

Bussing has not pleaded a legally sufficient claim based on the DFA.  Accordingly, to the extent the motion to dismiss challenges the sufficiency of the DFA retaliation claim, and the motion to file amended complaint seeks to reassert that claim, the motion to dismiss should be granted, the motion to amend should be denied as futile, and the court should find it lacks federal question subject matter jurisdiction.

16

   B.  Diversity Jurisdiction.

       Although the court lacks federal question jurisdiction, it may still have subject matter jurisdiction based on diversity if Bussing and the named defendants were citizens of different states at the time the suit was filed and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a)(1);  Altimore v. Mount Mercy College, 420 F.3d 763, 768 (8th Cir. 2005).  The court may rely on the facts of record, including those within the pleadings, in determining whether it has subject matter jurisdiction.  Yeldell v. Tutt, 913 F.2d 533, 537-38 (8th Cir. 1990)(citing Myers v. Hettinger, 94 F. 370, 372 (8th Cir.1899)).

       Bussing alleges diversity jurisdiction exists because the amount in controversy exceeds $75,000, the defendants are citizens of Nebraska, Delaware, and California, and although Bussing was residing in Nebraska at the time the action was brought, her permanent domicile is Washington and she is a Washington citizen.  (Filing Nos. 16 and 19).  As the party asserting federal subject matter jurisdiction, Bussing has the burden of proving citizenship by a preponderance of the evidence.  Altimore, 420 F.3d at 768.  "Citizenship is determined by a person's physical presence in a state along with [her] intent to remain there indefinitely."  Altimore, 420 F.3d at 768 (citing Yeldell v. Tutt, 913 F.2d 533, 537 (8th Cir. 1990)).

       Bussing submitted an affidavit which states see currently resides in New Jersey and worked in Nebraska for four to five months in early 2012,  (Filing No. 61-1), but she has maintained her Washington voter registration, vehicle registration, and driver's license.  In opposition to Bussing's contention, the defendants argue that when Bussing filed this action, she provided a Nebraska mailing address and admitted that she "relocated" from Washington to Nebraska when she accepted employment with Legent.

       The court finds Bussing's affidavit provides sufficient evidence to meet her burden of proving she is a citizen of Washington.  Specifically, the court gives significant weight to the fact that Bussing owns property in Washington and has maintained her Washington voter

registration, vehicle registration, and driver's license.   The defendants have provided little evidence to counter Bussing's assertion of Washington citizenship.

Complete diversity exists.  This court has federal subject matter jurisdiction.

### III.  Failure to State a Claim.

A.  <u>Standard of Review.</u>

The plaintiff is moving to file a third amended complaint—a motion filed after the defendant filed a motion to dismiss the current operative complaint.  Under Rule 15(a)(2) of the Federal Rules of  Civil Procedure, after the time for amending a pleading as a matter of course has expired, a pleading may be amended only with the opposing party's written consent or the court's approval. In general, courts are encouraged to allow amendments liberally.  See Mouser v. Caterpillar, Inc., 336 F.3d 656, 666 (8th Cir. 2003); Shen v. Leo A. Daly Co., 222 F.3d 472, 478 (8th Cir. 2000).  But the right to amend a complaint is not without limits.

> [A] district court can refuse to grant leave to amend a pleading only where it will result in undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment.

Dennis v. Dillard Dept. Stores, Inc., 207 F.3d 523, 525 (8th Cir. 2000)(internal citations omitted).  See also  K-tel Int'l, Inc. Sec. Litig., 300 F.3d 881, 899 (8th Cir. 2002)(noting futility constitutes a valid reason for denial of leave to amend).  "Ordinarily, the decision of whether to allow a plaintiff leave to amend a complaint is within the district court's discretion, however, when the court denies leave on the basis of futility, it means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure."  Cornelia I. Crowell GST Trust v. Possis Med., Inc., 519 F.3d 778, 781-82 (8th Cir. 2008).

18

Thus, for the purposes of considering both the motion to filed a third amended complaint and the motion to dismiss, the court must apply the Rule 12(b)(6) standard and decide if the plaintiff's complaint as a whole, or any legal theories advanced within it, fail to state a claim upon which relief may be granted.  Under Fed. R. Civ. P. 12(b)(6), the court must find that the factual allegations in the complaint, taken as true, are "enough to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " Iqbal, 556 U.S. at 678 (citations omitted).

B.  Plaintiff's State Law Claims.[7]

1.  Claims Based on Violation of Neb. Rev. Stat. §§ 20-148 and 48-1114(3).

Bussing alleges claims based on the Nebraska Fair Employment Practice Act.  Under Neb. Rev. Stat. § 48-1114(3), it is unlawful for an employer "to discriminate against any of his or her employees . . . because he or she (3) has opposed any practice or refused to carry out any action unlawful under federal law or the laws of this state."  Although the Nebraska Fair Employment Practice Act provides an administrative procedure for aggrieved parties to follow, Neb. Rev. Stat. § 20-148(1) allows a private cause of action against "[a]ny person or company . . . who subjects or causes to be subjected any citizen of this state or other person within the

---

[7] Defendants do not argue that Bussing's claims based on breach of contract and implied covenant of good faith fail to state a claim.  They seek dismissal of these claims solely on the basis of lack of subject matter jurisdiction.  See Filing No. 27 at CM/ECF pp. 22-25.  As such, the court will not address whether the contract-based claims meet the Rule 12(b)(6) pleading standards.

jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the United States Constitution or the Constitution and laws of the State of Nebraska."

Bussing's claims were not submitted for administrative review before this case was filed. Pursuant to the Nebraska Fair Employment Practice Act, but for Neb. Rev. Stat. 20-148, a plaintiff must exhaust his or her administrative remedies before filing an action in court. Bussing argues exhaustion was not a prerequisite for this lawsuit because her claims are brought pursuant to section 20-148 in that she alleges she was demoted and eventually fired for engaging in "protected activity" – e.g., complying with the Rule 8210 document request, cooperating in the FINRA exam against the wishes of the defendants, issuing directives to cease processing penny stock certificates, and preparing her internal report regarding the violations of the Bank Security Act and anti-money laundering violations.   Defendant counters that section 20-148 permits by-passing the administrative scheme set forth in the Nebraska Fair Employment Practice Act in only those cases alleging violations of an employee's civil rights.

Contrary to the defendants' argument, courts examining the legislative history of section 20-148 have concluded that it was meant to "provide an alternative remedy for plaintiffs who otherwise would be trapped in bureaucratic backlogs such as the one at [the Equal Opportunity Commission]."   Karstens v. International Gamco, Inc., 939 F. Supp. 1430 (D. Neb. 1996). Defendants provides no persuasive reason why this rational does not apply to Bussing's claim based on 48-1114(3).  That is, she is bringing a claim based on protected activity through the court system rather than through the channels of the NEOC as otherwise required by the Nebraska Fair Employment Practices Act.  Bussing is permitted to take advantage of the provisions of Neb. Rev. Stat. 20-148, and was not required to exhaust administrative remedies under the Nebraska Fair Employment Practice Act as a prerequisite to filing this case.

Plaintiff's claims under Neb. Rev. Stat. §§ 20-148 and 48-1114(3) are not subject to dismissal and are not futile.

20

2.   Wrongful Termination in Violation of Public Policy.

Bussing asserts a Nebraska tort claim for employment termination in violation of public policy.  Nebraska is an at-will employment state.  See Trosper v. Bag 'N Save, 273 Neb. 855, 734 N.W.2d 704, 706-07 (Neb. 2007).  As such, "[u]nless constitutionally, statutorily, or contractually prohibited, an employer, without incurring liability, may terminate an at-will employee at any time with or without reason."  Trosper, 273 Neb. at 857, 734 N.W.2d at 706-07. But an employee cannot be terminated at-will if "the motivation for the firing contravenes public policy."  Id.  "In determining whether a clear mandate of public policy is violated, courts should inquire whether the employer's conduct contravenes the letter or purpose of a constitutional, statutory, or regulatory provision or scheme."  Id.

Defendants argue that Bussing's claim is not well-pleaded because Bussing does not identify "state" public policy – i.e., Bussing is relying on DFA whistleblower protection.  But Defendants' argument overlooks Bussing's claim brought under the NEFPA and through Neb. Rev. Stat. § 20-148.  Even if NEFPA does not directly apply to a case, Neb. Rev. Stat. § 48-1114 "support[s] the rather obvious conclusion that it is against the public policy of this state for employers to require employees to violate the law in order to remain employed."  Simonsen v. Hendricks Sodding & Landscaping Inc., 5 Neb.App. 263, 270, 558 N.W.2d 825, 830 (1997).

Plaintiff has adequately alleged a claim for wrongful termination in violation of Nebraska's common law.

3.   Defamation.

Bussing alleges Defendants made defamatory statements about her 1) to Legent employees,  and 2) on the Form U-5 filed with FINRA.   Under Nebraska law, to assert a defamation claim, the plaintiff must prove: (1) the defendant made "a false and defamatory statement concerning the plaintiff," (2) the statement was published to a third party through an

21

unprivileged communication, (3) the publisher was at least negligent in making the false publication, and (4) the false publication was either actionable irrespective of special harm, or special harm was caused by the publication." Nolan v. Campbell, 13 Neb. App. 212, 218, 690 N.W.2d 638, 646-47 (2004). A defamation claim can be pleaded generally, so long as it meets the requirements of Rule 8(a) and Atlantic v. Twombly, 550 U.S. 544, 555 (2007). However, a Plaintiff must plead some factual allegations showing the publication of a false statement and generally describe the manner and to whom it was uttered. Suarez v. School Bd. of Hillsborough County, case no. 13cv1238, 2013 WL 5653435, at *4 (M.D. Fla. 2013).

Bussing's proposed amended complaint falls short of pleading a defamation claim. Bussing does not assert how any alleged statements made to Legent employees were defamatory in meaning. In fact, she does not identify any words used at all other than Frankel was "dancing on her grave" and that "she heard from various staff members that she had been fired." (Filing No. 63-1, ¶ 69 at CM/ECF p. 15). Frankel's assertion is hardly a factual statement, and Bussing does not assert which, if any, of the defendants published the statement that she was fired as of May 4. Accordingly, as to any alleged statements made by Defendants to Legent employees, the proposed third amended complaint falls short of stating a claim for which relief may be granted. See e.g., Dupree v. City of Lexington Police Dept., case no. 12cv345, 2012 WL 1799193, at *9 (M.D.N.C. 2012)(collecting cases); Simmons v. Science Intern. Applications Corp., case no. 11cv1426, 2012 WL 761716, at *4 (D.S.C. Feb. 13, 2012).

Bussing claims the Form U-5 submitted to FINRA contained a defamatory statement. The Form U-5 stated that Bussing was terminated because "she did not perform position consistent with company expectations." (Filing No. 63-1, ¶74 at CM/ECF p. 16). This statement, to an objective person, would indicate Plaintiff was, at the least, unable or unwilling to perform her job; at worst, that she committed an unlawful act. As such the plaintiff claims the publication of this statement was defamatory and she was harmed as a result of the statement. Defendants argue that the Form U-5, and statements within it, are privileged.

22

Under Nebraska law, otherwise defamatory statements are not actionable if those statements qualify for "absolute privilege." Kocontes v. McQuaid, 279 Neb. 335, 340, 778 N.W.2d 410, 416 (2010). "Absolute privilege attaches to defamatory statements made incident to, and in the course of, judicial or quasi-judicial proceedings if the defamatory matter has some relation to the proceedings." Kocontes v. McQuaid, 279 Neb. 335, 340, 778 N.W.2d 410, 416 (2010). "When the law commits to any officer the duty of looking into facts and acting upon them, not in a way which it specifically directs, but after a discretion in its nature judicial, the function is quasi-judicial." Kocontes, 279 Neb. at 341, 778 N.W.2d at 416 (2010). Kocontes identified the following six considerations for determining whether a body is quasi-judicial:

> (1) the power to exercise judgment and discretion; (2) the power to hear and determine or to ascertain facts and decide; (3) the power to make a binding order and judgment; (4) the power to affect the personal or property rights of private persons; (5) the power to examine witnesses, to compel the attendance of witnesses, and to hear the litigation of the issues at a hearing; and (6) the power to enforce decisions or impose penalties.

Kocontes, 279 Neb. at 341, 778 N.W.2d at 416-17 (2010).

The parties have not cited to, nor has the court found, any cases discussing Nebraska law regarding the absolute privilege and termination notices – i.e., the Form U-5 – sent to FINRA. However, other courts addressing this very issue and applying defamation laws similar to Nebraska's, have found only a limited privilege at best. See Baravati v. Josephthal, Lyon & Ross, Inc., 28 F.3d 704, 708 (7th Cir. 1994); Glennon v. Dean Witter Reynolds, Inc., 83 F.3d 132, 137 (6th Cir. 1996). These cases find that although FINRA is undoubtedly a quasi-judicial body, the Form U-5 is not filed as a part of a "proceeding." "Although the Form U-5 can trigger an investigation of a member or broker and may be used as evidence in a disciplinary proceeding, it is not part of a judicial proceeding. . . . [T]he Form U-5 is merely a preliminary or investigatory formality, not part of [FINRA]'s quasi-judicial regulatory process . . . ." Glennon, 83 F.3d at 137 (internal citation omitted).

23

The plaintiff's proposed amended complaint does state a defamation claim against the entity defendants as to statements made within the Form U-5.  However, there is no allegation that any individual defendant was responsible for the Form U-5 statements and, as such, the plaintiff has failed to state a claim against the individual defendants for statements made within the Form U-5.  As to all defendants, both the current and proposed amended complaint fail to state a defamation claim arising from statements made to other Legent employees.

   4.  Claims based on Fraudulent Inducement, Fraudulent Misrepresentation, Fraudulent Concealment, and Negligent Misrepresentation.

Defendants allege Bussing's claims based on fraudulent inducement, fraudulent misrepresentation, fraudulent concealment, and negligent misrepresentation are not pleaded with the proper specificity to survive a motion to dismiss and as a result, the motion to file the proposed amended complaint must be denied as futile.

As Defendants correctly note, allegations of fraud require specificity in pleading.[8]  See Farm Credit Services of America, FLCA v. Haun, --- F.3d ---, 2013 WL 4423185 at *3 (8th Cir. August 20, 2013).  That is, the plaintiffs must assert the who, what, why, when, where, and how of the alleged fraud.  See Mitec Partners, L.L.C. v. U.S. Bank Nat. Ass'n, 605 F.3d 617, 622 (8th Cir. 2010); see also Fed. R. Civ. P. 9(b).  Defendants argue plaintiffs' third amended complaint is "devoid of allegations of fraud or misrepresentation sufficient to meet the heightened pleading requirements . . . ."  (Filing No. 66 at CM/ECF p. 22).

Contrary to Defendants' argument, the plaintiff's fraud and misrepresentation claims are not wholly insufficient.  But they are lacking in one area – specificity of the defendant or defendants who made the alleged fraudulent or misleading statements.  The third amended complaint states that "Sugarman, Legent, and COR (and their respective officers and directors)

---

[8] Under Nebraska law negligent misrepresentation is "a subspecies of fraud."  Farr v. Designer Phosphate & Premix Int'l, Inc., 253 Neb. 201, 570 N.W.2d 320, 326 (1997).  As such, it must be pled with particularity.  See Farm Credit Services of America, FLCA, --- F.3d at ---, 2013 WL 4423185 at *3.

made certain assurances to Bussing to induce her to accept employment with Legent." (Filing No. 63-1, ¶ 26 at CM/ECF p. 7). She also lists a number of specific statements or representations made to her, but states that the representations were made by "Defendants, and each of them." (Filing No. 63-1, ¶¶ 108, 115, & 129). This is not specific enough to place each of the defendants on proper notice of the claims against them respectively. See Parnes v. Gateway 2000, Inc., 122 F.3d 539, 550 (8th Cir. 1997); Moua v. Jani-King of Minnesota, Inc., 613 F. Supp. 2d 1103, 1111 (D. Minn. 2009)("[T]he plaintiff must take care to identify which of [the defendants] was responsible for the individual acts of fraud")(internal citations omitted). Likewise the claim for fraudulent concealment simply alleges that "Defendants had a duty to disclose to Bussing," but does not assert which defendants allegedly had that duty.

The claims based on fraud, misrepresentation, and concealment are not properly pleaded. As to these claims, the motion to file a proposed third amended complaint should be denied as futile.

5. Tortious Interference with a Business Relationship.

Under Nebraska law, a plaintiff asserting a claim for tortious interference with a business relationship or expectation must prove: "(1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted." Koster v. P & P Enters., 248 Neb. 759, 764, 539 N.W.2d 274, 278-79 (1995). "[I]n order to constitute interference with an employment relationship, actions of a coemployee must be shown to have been committed in furtherance of some purpose other than the lawful purposes of the employer. If such interference is established, it must also be proved to be 'unjustified' in order to be actionable." Huff v. Swartz, 258 Neb. 820, 828, 606 N.W.2d 461, 468 (2000).

25

The question before the court is whether the proposed third amended complaint sufficiently alleges that any defendant committed an unjustified intentional act of interference and that the claimed interference caused the plaintiff's harm.   Bussing contends she was terminated, in part, because she responded fully to the FINRA Rule 8210 document request and performed audit work related to the anti-money laundering compliance.   At this stage in the litigation, the court cannot say her claims against the individually named defendants are futile. The allegations state that Bussing was terminated from her employment for not following the instruction of the individual defendants to "stall, delay, stop digging and stop responding" to the FINRA investigation and for refusing to discontinue her audit work uncovering potential anti-money laundering compliance issues.   Taken as true for the purposes of this motion, the court does not believe avoiding regulatory compliance and covering up potential money laundering violations falls within the lawful purposes of the employer, and the individual defendants' command that Plaintiff  commit these acts could be considered an intentional effort to interfere with Bussing's relationship with COR and Legent.

But the proposed amended complaint does not sufficiently plead a tortious interference claims against the corporate defendants.   Bussing argues she had business relationships with COR and Legent separately and that each company interfered with Bussing's business relationship with the other corporation.   (Filing No. 67 at CM/ECF p. 26).   However, the proposed third amended complaint does not plead facts discussing how these entities carried out acts of interference specifically directed at her relationship or expectancy with the other organization.   Thus, to the extent Bussing makes claims against the entity defendants, the amendment would be futile.

6.  Negligence.

Plaintiff alleges the defendants negligently failed "to communicate truthfully with [her] and to refrain from fraudulent and negligent communications with her" and failed to accurately report her income and other employment-related information to the Internal Revenue Service.

(Filing No. 63-1, ¶141-42 at CM/ECF p. 25).  Defendants argue amending the complaint to add a claim for negligence would be futile because, "there is no mention of (1) Defendants communicating untruthfully or fraudulently with Plaintiff, or (2) the Internal Revenue Service." (Filing No. 66 at CM/ECF p. 31).

To the extent Bussing attempts to amend her complaint based on Defendants' failure to refrain from making fraudulent and negligent communications to her, she is re-pleading her allegations based on fraud and negligent misrepresentation. These claims have specific pleading requirements that the court addressed above.  Accordingly, the proposed common law negligence claims based on the communications between Bussing and the defendants are futile.

As to Bussing's claims asserting inaccurate IRS reporting, the proposed amended complaint alleges all of the defendants had a duty to "report Bussing's income and other contract-related or employment-related information to the Internal Revenue Service and other appropriate authorities and that they failed to do so." While these claims are not particularly well-developed at this time, Bussing has at least met the minimum standard for pleading a claim of negligence based on the assertion that the entity defendants failed to properly report income information to the IRS.  The proposed complaint does not state any negligence claims against the individual defendants.

Accordingly,

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable Warren K. Urbom, United States District Judge, pursuant to 28 U.S.C. § 636(b), that

1)      The plaintiff's motion to file the proposed third amended complaint, (Filing No. 63), should be denied.

2)      Defendant's motion to dismiss, (Filing No. 26), should be granted in part and denied in part as follows:

27

a)      Defendant's motion to dismiss based on lack of subject matter jurisdiction should denied.

b)      Plaintiff's claim of retaliation based on 15 U.S.C. § 78u-6 should be dismissed.

c)      Plaintiff's negligence claim based on Defendants' duty to communicate truthfully with Bussing is subject to dismissal for failure to state a claim.

d)      Plaintiff's claim of defamation based on the defendants' alleged statements to Legent staff is subject to dismissal for failure to state a claim.

e)      Plaintiff's claim of defamation against the individual defendants based on the statements within the Form U-5 is subject to dismissal for failure to state a claim.

f)      The remaining portions of Defendant's motion to dismiss should be denied.

3)      The plaintiff should be granted leave to file a motion to amend her complaint and reassert her state law claims consistent with this Findings and Recommendation.

The parties are notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

Dated this 27th day of November, 2013.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.