IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

JULIE A. BUSSING,

                 Plaintiff,

       vs.

COR CLEARING, LLC,  COR
SECURITIES HOLDINGS, Inc.; CARLOS
P. SALAS, CHRISTOPHER L. FRANKEL,
JEFFREY N. SIME, STEVEN A.
SUGARMAN,

                 Defendants.

**8:12CV238**

**MEMORANDUM AND ORDER**

The defendants have moved for a protective order, arguing their "customer information, trade secrets, current financial information, and confidential settlement communications are information that is confidential and proprietary," and use and disclosure of such records must be for attorney's eyes only ("AEO").  (Filing No. 141).  The plaintiff opposes the motion, stating the defendants "have identified only broad, generic categories of information they believe might be subject to AEO protection: "customer information, trade secrets, current financial information, and confidential settlement communications," they fail to acknowledge that "much information about Defendant COR Clearing already is public," and their motion "does not even approach 'a particular and specific demonstration of fact, as distinguished from conclusory statements.'"  (Filing No. 145, at CM/ECF p. 6).

As explained by Plaintiff's counsel, "the dispute before the Court is narrow: whether the protective order entered should have an 'attorney's eyes only' or 'AEO' provision as requested by Defendants."  (Filing No. 145, at CM/ECF p. 3).

STATEMENT OF FACTS

Plaintiff Julie Bussing is the president of Prime Clearing, a financial services business. (Filing No. 143-6). In that capacity, she primarily focuses "on platform design and integration work for next generation clearing." (Filing No. 143-6, at CM/ECF p. 1). Neither Bussing nor Prime Clearing directly compete with any of the Defendants. (Filing No. 144-9). Defendants' argue, however, that "Ms. Bussing is currently a consultant in the industry, and has no reason to be privy to trade secret or other proprietary information that would be valuable to [Defendants'] competitors or customers as leverage." (Filing No. 144-4, at CM/ECF p. 3). As such, they claim Ms. Bussing could use Defendants' discovery responses to compete, or assist her clients in competing, against the Defendants' business. (Filing No. 144-4, at CM/ECF p. 3).

The defendants claim that documents identifying their customers, clients, and correspondents' names, financial figures that came into existence after Plaintiff's departure, Defendants' Change of Control Plan, Internal Financial Reports that show Defendants' current financial condition, and confidential settlement agreements from employment claims should be subject to an "attorney eyes only" protective order. (Filing No. 144-5, at CM/ECF p. 3, 6, 8, 10); (Filing No. 147, at CM/ECF p. 6-7). Defendants claim the plaintiff cannot be trusted to comply with a protective order, citing allegations in their counterclaim alleging that in her submissions to the court, the plaintiff modified the recipient information and disclosed privileged and confidential e-mail correspondence addressed to COR Clearing's legal counsel without Defendants' consent. (Filing No. 112, at CM/ECF p. 33-34,¶¶ 81-84). Bussing was a pro se party when these alleged acts occurred.

LEGAL ANALYSIS

The discovery process presents "an opportunity for litigants to obtain – incidentally or purposefully – information that not only is irrelevant but if publicly released could be damaging. . . ." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 35, (1984). Pursuant to Rule 26(c)(7) of the Federal Rules of Civil Procedure, upon a finding of good cause, the court may enter "any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden," including that "confidential research, development or commercial information not be revealed or be revealed only in a designated way." Fed. R. Civ. P. 26(c)(7).

The court may enter a protective order which permits certain discovery to be seen by only counsel. An "attorneys eyes only" protective order prevents a party from viewing the opposing party's sensitive business information while allowing the parties' lawyers to litigate on the basis of that information. Paycom Payroll, LLC v. Richison, 758 F.3d 1198, 1202-03 (10th Cir. 2014) (quoting In re City of New York, 607 F.3d 923, 935 (2d Cir. 2010)). But limiting disclosure of discovery to the attorneys is appropriate only in very limited situations. It is a drastic remedy because "it limits the ability of the receiving party to view the relevant evidence, fully discuss it with counsel, and make intelligent litigation decisions." Ragland v. Blue Cross Blue Shield of N. Dakota, 2013 WL 3776495, at *1 (D.N.D. June 25, 2013). And it "limits the ability of a party to provide needed assistance to counsel," (Ragland, 2013 WL 3776495, at *1), which may result the in the denial of fundamental due process rights. Martinez v. City of Ogden, 2009 WL 424785, at *3 (D. Utah Feb. 18, 2009). An "attorneys eyes only" protective order "should not be authorized simply because one of the parties would prefer that certain information not be disclosed to an opposing party." Ragland, 2013 WL 3776495, at *2.

The party seeking attorney eyes only protection has the burden of providing: 1) the information sought is a trade secret or other confidential research, development, or commercial information, and 2) its disclosure might be harmful. If these threshold requirements are met, the burden shifts to the party seeking discovery to establish that the

disclosure of information requested is relevant and necessary to the action.  The court must then balance the need of the party seeking discovery against the opposing party's claim of potential injury resulting from the disclosure.  MGP Ingredients, Inc. v. Mars, Inc., 245 F.R.D. 497, 500 (D. Kan. 2007).  Where discovery of confidential commercial information is involved, the court must "balance the risk of disclosure to competitors against the risk that a protective order will impair prosecution or defense of the claims."  Nutratech, Inc. v. Syntech (SSPF) Int'l, Inc., 242 F.R.D. 552, 555 (C.D. Cal. 2007).  See also Martinez v. City of Ogden, 2009 WL 424785, at *2 (D. Utah Feb. 18, 2009) ("Attorney's-eyes-only protection is usually employed to protect against business harm that would result from disclosure of sensitive documents to a competitor.").

In weighing these competing interests, the court must consider "whether the individual to be prohibited from accessing the information would be virtually unable to compartmentalize the information and not use the information to seek to gain an unfair competitive advantage."  Layne Christensen Co. v. Purolite Co., 271 F.R.D. 240, 249-50 (D. Kan. 2010).  The court must also consider whether prohibiting a party's access to the information would hamper that party's ability to assess the merits of the litigation, taking into consideration whether her expertise is specialized and not widely available through the retention of other experts, and whether this specialized expertise is essential to the proper handling of her lawsuit.  Layne Christensen Co., 271 F.R.D. at 249-50.

To establish good cause, that party opposing disclosure must submit "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."  Layne Christensen Co. v. Purolite Co., 271 F.R.D. 240, 244 (D. Kan. 2010).  See also Burlington N. R. Co. v. Omaha Pub. Power Dist., 703 F. Supp. 826, 831 (D. Neb. 1988), aff'd, 888 F.2d 1228 (8th Cir. 1989) (citing Restatement (First) of Torts § 757 (1939), and listing the relevant factors a moving party must show for trade secret protection).  But they need not demonstrate, on a document-by-document basis, each item worthy of protection.  Provided the moving party makes a threshold showing of good cause, the court may enter an

4

"umbrella" protective order protecting a category of documents from disclosure to anyone other than counsel.  Cipollone v. Liggett Grp., Inc., 785 F.2d 1108, 1122 (3d Cir. 1986).

The court must initially decide whether the defendants have met their burden of showing that the information they seek to designate as Attorney Eyes Only" is confidential commercial information, the disclosure of which will harm the defendants.  The defendants' proposed protective order recites "client lists, customer information, non-public business or financial strategies, business plans, strategic plans, sales and marketing plans, markets surveys, earnings or other financial projections, and information related to confidential settlements with persons not involved in this litigation" as warranting Attorneys Eyes Only protection.  But subject to the exceptions further discussed below, the evidence discusses these categories of discovery, if at all, in very broad terms with not precise explanation of what the defendants seek to protect.  For example, "customer information,[1]" and business, strategic, and sales and marketing plans are broadly identified as needing Attorney Eyes Only protection.  But the defendants have submitted no evidence specifically describing any of the documents within these categories, whether and why all documents within these broad descriptions must be protected by an Attorneys Eyes Only designation, the measures the defendants have taken to maintain the confidential status of these documents, whether the documents are currently available from another source, the extent of defendants' company-specific effort in creating any formulas, surveys, or business strategies underlying the documents, or how their release to the plaintiff will harm the defendants.  The defendants' conclusory statements and arguments in their briefs cannot replace the requisite factual showing for granting an Attorney Eyes Only protective order.

The court finds, however, that two categories of documents listed by the defendants should be protected by an Attorney Eyes Only designation:  Client lists and confidential settlement agreements with third parties.  From the record, the court can reasonably infer that

---

[1] Since it is listed separately, "customer information" must be something different than "client lists."  The court does not know how the defendants are defining "customer information."

the plaintiff either competes with the defendants herself, or she consults with Defendants' competitors. Once she knows the names on the defendants' client list, she will have difficulty compartmentalizing that information as she performs her own work. Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer, 285 F.R.D. 481, 491 (N.D. Cal. 2012). And she could, inadvertently use information from the defendants' client lists to create an unfair competitive environment against the defendants. Moreover, the client lists themselves do not appear to be critical to pursuing the plaintiff's claims. On balance, the court concludes the client lists should be designated as Attorney Eyes Only documents. See, e.g., Nutratech, Inc. v. Syntech (SSPF) Int'l, Inc., 242 F.R.D. 552, 555 (C.D. Cal. 2007) (holding the fear of competitive harm from disclosing supplier and customer lists to the competitor's president and owner, rather than counsel, was legitimate—"such lists are customarily produced subject to an 'attorney's eyes only' order").

The defendants further claim that documents reflecting settlements with third parties, and containing confidentiality clauses, must be afforded Attorney Eyes Only protection. By their very nature, these documents were not intended to be seen by anyone other than the defendants and the settling third parties—who are not parties to this litigation. However, the confidentiality clauses of settlement agreements must occasionally give way when those agreements are relevant in other litigation. Under such circumstances, the court will grant Attorney Eyes Only protection to these settlement agreements, but with a caveat: If after seeing the documents, Plaintiff's counsel believes one or more of them must be discussed with the plaintiff to fully and fairly prepare for trial, Plaintiff's counsel may move to do so—on a document-by-document basis. If that occurs, the defendants will have the burden of showing the documents cannot be adequately protected from disclosure if designated as "Confidential" rather than "Attorney Eyes Only."

The Plaintiff asks for a court order stating the defendants will be sanctioned if they later present a "a properly structured motion" to request Attorney Eyes Only protection. The court will not enter an *in futuro* order. But upon review of the email correspondence between the parties, it appears Plaintiff repeatedly requested a detailed explanation of the

documents and case law so the parties could craft an appropriate protective order without court intervention, but that information was not forthcoming.  And as to nearly all the documents they seek to protect with an Attorney Eyes Only designation, the defendants failed to file evidence before this court describing with any particularity the documents they want to withhold from Bussing's personal review.  Any motion seeking to do so now will likely not be a motion to reconsider, but rather a motion to "do over."  Such motions slow the discovery process substantially and waste the parties' and the court's resources.  But how the court will respond if such a motion is later filed will be decided on evidence submitted at that time, and not in this order.

Accordingly,

IT IS ORDERED:

1)      The defendants' motion for protective order, (Filing No. 141), is granted in part and denied in part as set forth in this order.

2)      A protective order reflecting the contents of this decision will be separately filed.

July 6, 2015.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.